[No. 4728. Decided December 10, 1903.]

THE STATE OF WASHINGTON, on the Relation of C. B. Bussell, Plaintiff, v. S. A. CALLVERT, as Commissioner of Public Lands of the State of Washington, Defendant.[1]

PUBLIC LANDS—LEASE FROM STATE—FORFEITURE—POWER OF COMMISSIONER OF PUBLIC LANDS. A lease of tide lands made in accordance with the provision of Laws 1897, p. 253, as amended by Laws 1897, pp. 242–244, and Laws 1899, p. 139, can not be cancelled by the commissioner of public lands for any cause except nonpayment of rent, as authorized by § 25, Laws 1897, p. 244, and the commissioner's unauthorized cancellation of a lease is a mere nullity.

TIDE LANDS—STATE DEED TO THE UNITED STATES—USE FOR MAINTAINING FORTS—TITLE TO UPLAND NOT HELD BY THE GOVERNMENT. A deed of tide lands from the state to the United States, made under Laws 1890, p. 428, purporting to grant the use of such tide lands for the purpose of maintaining forts, etc., is invalid where such tide lands did not border upon upland held or reserved by the United States government for the purposes specified, as required by said act authorizing a deed from the state.

SAME—RIGHTS OF PRIOR LESSEE. Nor could such a deed abrogate the rights of a prior lessee of such tide lands, under a valid lease from the state, Laws 1897, p. 243, providing that lands held under lease shall not be offered for sale except to the lessee.

SAME—PURCHASE FROM STATE NOT AUTHORIZED BY CONSENT TO ACQUIRE TITLE FROM OTHERS. Laws 1890, p. 459, and Laws 1891, p. 31, granting the consent of the state to the purchase or condemnation by the United States, of lands owned by individuals or bodies politic or corporate within the state, in accordance with

[1]Reported in 74 Pac. 573.

United States constitution, Art. 1, § 8, clause 17, were not intended to authorize a purchase from the state, and the acceptance by the United States of a deed from the state is not authorized by said laws as a purchase from a body politic.

SAME—GRANT OF STATE LANDS FOR LAKE WASHINGTON SHIP CANAL—RIGHTS OF PRIOR LESSEES. Laws 1901, p. 7, granting to the United States the right to construct a ship canal connecting Lakes Union and Washington with Puget Sound through and over all state lands in King county, was not intended to annul existing leases of state tide lands made by the state to private parties, since such an attempt would be unconstitutional.

SAME. As such grant is general, it probably was not intended to convey the fee of leased lands, in view of Laws 1897 p. 243, prohibiting their sale.

SAME. Even if the fee was conveyed, it would be subject to the lease, and the commissioner of public lands could not exonerate himself from accepting rent by his arbitrary and illegal act of cancelling the lease.

MANDAMUS—COMPELLING COMMISSIONER OF PUBLIC LANDS TO RECOGNIZE VALID LEASE OF TIDE LANDS. Under Bal. Code, 5755, providing that a writ of mandamus may issue to any inferior tribunal, board or person, to compel the performance of a duty especially enjoined by law, or the admission of a party to the enjoyment of a right from which he is unlawfully precluded, mandamus is the proper remedy to compel the commissioner of public lands to accept rent due under a valid lease of tide lands which he has unlawfully cancelled and refuses to recognize.

Application to the supreme court for a writ of mandamus, filed June 12, 1903, to which the defendant demurred. Writ granted.

*Peters & Powell,* for relator, upon the right of the commissioner to cancel the relator's lease for the reasons assigned, cited: *United States, ex rel. McBride, v. Schurz,* 102 U. S. 378; *Bicknell v. Comstock,* 113 U. S. 149, 5 Sup. Ct. 399.

*The Attorney General,* and *C. C. Dalton* and *E. W. Ross,* for defendant. Individuals cannot maintain a proceeding to annul a patent. Washburn, Real Property,

pp. 209, 210 (5th ed.); 1 Dembetz, Land Titles, pp. 503, 514, 515; *McKinney v. Bode,* 33 Minn. 450, 23 N. W. 851; *Baker v. Newland,* 25 Kan. 25. Lands once sold are no longer subject to disposition, and the lease should not be reinstated while the United States holds the fee by grant. 1 Dembetz, Land Titles, p. 516; *State ex rel. Marsh v. State Board of Land Com'rs,* 7 Wyo. 478, 53 Pac. 292.

ANDERS, J.—This is an original application to this court for a writ of mandate commanding the defendant, as commissioner of public lands, to recognize the existence and validity of a lease of certain tide lands of the first class, executed in behalf of the state by the commissioner of public lands, and to accept from the relator the rent now due upon said lease, and the rent that may hereafter become due thereon, according to its terms, and to keep a record of all such payments, according to the statutes and the rules and regulations of his office.

The affidavit of the relator alleges:

"That on the first day of December, 1899, the state of Washington, by and through Robert Bridges, the then duly qualified and acting commissioner of public lands, duly issued according to law, to G. A. Wilson, then a citizen of the state of Washington, residing at Ballard, in King county, Washington, its lease of certain tide lands of the first class in front of the city of Ballard, King county, for the period of thirty years; that said lease was duly executed in duplicate by the said state and the said G. A. Wilson, as required by law, and the original thereof was, by the state of Washington, through the said commissioner Bridges, delivered to the said Wilson on the 1st day of December, 1899, and the duplicate thereof filed and kept in the office of the said commissioner; that a true copy of said lease is hereto attached, marked 'Exhibit A,' and made a part hereof; that said G. A. Wilson, on said 1st day of December, 1899, paid to the said commissioner the sum of $113.42, for rent due upon said lease for the first year of

the term thereof, according to its terms, and the said com-
missioner accepted said sum as and for such rent and
credited the same upon said lease; that thereafter, on the
3d day of December, 1900, the said Wilson and his wife,
for a valuable consideration to them in hand paid by the
affiant, sold, transferred and assigned said lease in writing
to this affiant; that on the 1st day of December, 1900, the
said Wilson tendered to the said commissioner the sum of
$113.42, as rent for the second year of the term of said
lease according to its terms, but the said commissioner
refused to recognize said lease or the rights of said lessee;
that on the 1st day of December of each and every year
thereafter this affiant has tendered to the qualified and
acting commissioner of public lands, for the time being, all
rents then due and unpaid upon said lease, according to its
terms, together with the additional sum of $113.42 as and
for rent for each ensuing year; that the defendant suc-
ceeded the said Bridges in the office of commissioner of
public lands of the state of Washington, and is now such
duly qualified commissioner; that the said Bridges, while
still commissioner as aforesaid, refused to accept any rents,
the payment of which was tendered as aforesaid, and
refused to recognize said lease after the first day of Decem-
ber, 1900; and that the defendant, when he succeeded to
the office of commissioner as aforesaid, also refused to
accept any rents upon said lease, when tendered as afore-
said, and still so refuses; that at the time of the execution
and issuance of said lease, all the tide lands described
therein were subject to lease by the state of Washington,
under the statutes thereof, and said lease was made and
issued wholly in accordance with law; that on or about the
14th day of May, 1900, the said Bridges, then commis-
sioner as aforesaid, attempted and pretended to cancel said
lease, without the knowledge of, and without notice to, the
said G. A. Wilson, or to this affiant; that at the time of
the pretended cancellation the said lease was in good stand-
ing, and no rent was due and unpaid, and none of the
covenants and conditions of said lease had been broken or
violated by the lessee; that the said Bridges as commis-

sioner assumed and claimed the right to cancel said lease for the following reasons, and none other: that a portion of the tide lands covered by said lease was included within the lands which were then being sought to be appropriated by the county of King for a right of way for a canal, to be constructed by the United States government to connect the waters of Puget Sound and Lake Union in said county; that neither said Wilson nor this affiant was ever made a party to any condemnation proceedings brought by said King county, or by any other person, corporation, or body politic to condemn or appropriate any portion of said land, or any interest therein; and neither the said Wilson nor this affiant has ever been compensated in damages for the appropriation of any portion of said lands, or for any damages thereto, nor has any person, corporation, or body politic offered to compensate them therefor; nor have said lands, or any part thereof, ever at any time been taken or appropriated by the said King county, or by the United States government for any purpose whatever; that, at the time of the execution of said lease, and at the time of the pretended cancellation thereof by the said Bridges, no person, corporation, or government had any right, title, claim, interest, or demand in, to, or upon any of the tide lands covered by said lease, except the state of Washington and the said lessee."

A demurrer was interposed by the defendant to the foregoing affidavit of the relator, filed herein upon his application for a writ of mandate, on the ground that the same did not state facts sufficient to constitute a cause of action, or to warrant the granting of the relief prayed for, or any relief whatever. It was thereafter stipulated by and between the parties hereto that, upon the argument of this demurrer, the following facts should be considered as a part of, and incorporated in, the relator's affidavit, viz.: That on April 26, 1900, John R. Rogers, as governor of the state of Washington, and Will D. Jenkins, as secretary of state, made, executed, and delivered to the United States the deed

(which is attached to the stipulation), as and for the deed of the state of Washington, and that a portion of the lands described therein is a portion of the lands covered by the original lease from the state of Washington attached to the affidavit of C. B. Bussell herein; that said deed was made without money consideration, and without public sale; and that no part of the tide lands covered by said lease, and no tract, piece, or parcel of land upon which any part of the same adjoins or borders has ever been, or is now, held or reserved by the government of the United States for the purpose of erecting or maintaining thereon any fort, arsenal, magazine, dock-yard, or other needful buildings.

The cause was heard upon the demurrer to the plaintiff's affidavit, as supplemented by the stipulation of the parties above set forth. It is insisted by the learned counsel for the defendant that the relator is not entitled to the relief demanded, or to any relief whatever, upon the facts stated in his affidavit, and admitted by the defendant's demurrer. It is conceded that the state, by its commissioner of public lands, was authorized to make the lease in controversy herein by § 50 of the act of March 16, 1897 (Laws 1897, p. 253), as amended by § 2, Laws 1899, p. 139, and by Laws 1897, pp. 242 to 244 inclusive; and it is admitted that the relator's lease was executed strictly in accordance with the provisions of the above mentioned statutes.

Section 25 of the act of March 16, 1897, *supra,* provides that the commissioner of public lands shall keep a full and complete record of all leases issued and payments made thereon, and shall declare a forfeiture of such lease for nonpayment of the annual rent reserved, after sixty days' notice to the lessee. This is the only provision of the law, so far as we are advised, authorizing the forfeiture or cancellation of leases by the commissioner. And, as it is admitted that no

rent was due upon the lease at the time of the attempted forfeiture, it would seem logically to follow that the commissioner had no legal authority or power to cancel it, and that his declaration of forfeiture was without force or effect as to the rights of the relator. It cannot be presumed that the legislature intended to clothe the commissioner of public lands with power to annul leases formally executed by the state for any reason other than that specifically mentioned in the statute; and we are therefore of the opinion that the relator's lease is still a valid and subsisting contract with the state, notwithstanding the action of the commissioner regarding the same, unless the contentions of the defendant, hereinafter mentioned, are tenable.

By an act of the legislature approved March 20, 1890, the state granted to the United States the *use* of any tide lands belonging to the state and adjoining and bordering on any tract, piece, or parcel of land held or reserved by the government of the United States for the purpose of erecting and maintaining thereon forts, magazines, . . . and other needful buildings, so long as the upland adjoining such tide lands shall continue to be held by the government of the United States for any of the public purposes therein mentioned. This act also provides that, whenever the government of the United States shall cease to hold for public purposes any such tract, piece, or parcel of land, *the use of the tide lands bordering thereon* shall revert to the state of Washington. Laws 1890, p. 428.

It will be observed that this act simply granted to the government of the United States the *use* of tide lands belonging to the state, upon the conditions, and for the time therein specified. It does not seem to contemplate a conveyance of an estate in fee, but rather an easement of an indefinite duration. The governor and secretary of state, un-

der and by virtue of the power supposed to have been there-
by conferred upon them, executed the deed above mentioned,
purporting to "give, grant, and convey" to the United
States, for its own use and behoof, the parcels of tide lands
thereon described, "to have and to hold, to the said United
States, so long as the said United States, grantee herein,
shall use the said described property for the purpose of
erecting and maintaining forts, magazines, arsenals, dock-
yards, and other needful buildings." This deed is upon
the condition "that at any time when the government of the
United States shall cease to use, for any of the public pur-
poses hereinbefore enumerated, such tracts or parcels of
land above described, then and thereupon, all the right,
title, and *use* of the said tide lands above described shall
immediately revert to, and vest in, the said state of Wash-
ington." This deed shows upon its face that it was exe-
cuted under the act of March 20, 1890, *supra,* and that it
authorizes the United States to hold, possess, and use the
tide lands therein described only so long as the adjoining
uplands shall be held by it for the purposes specified there-
in.

It is admitted upon the record that the tide lands in
question did not adjoin or border on any lands held or re-
served by the United States for any of the purposes men-
tioned in the act under which the deed was made; and it is
therefore difficult to understand why it was deemed proper
or necessary to execute that instrument. The government
of the United States may never need the use of the lands
covered by the deed, and until it does, it will have no occa-
sion to question the right of the relator to hold possession
of them. Whatever the effect of the deed may be as to the
rights of the federal government, it is plain for obvious rea-
sons that it did not, and could not, operate to abrogate the

relator's contract with the state, nor can we concede that it was the intention of the legislature, as expressed by this act of March 20, 1890, to grant to the United States the use of lands already in the possession and use of private persons under a valid lease, or to authorize the conveyance of such lands by the state's officers to the United States, to the injury of the lessee. That such was not the legislative intention is made plain by § 23 of the act of March 16, 1897 (Laws 1897, p. 243), which provides that "lands held under lease shall not be offered for sale or sold, except to the lessee, if the lessee shall keep his lease in good standing." It would seem from this provision of the statute that the deed under consideration was not authorized by law.

By an act approved January 23, 1890 (Laws 1889-90, p. 459), the state legislature granted permission to the government of the United States to purchase "any tract, piece, or parcel of land from any individual or individuals, bodies politic or corporate, within the jurisdiction of this state, for the purpose of erecting and maintaining thereon armories, . . . lighthouses, and other needful public buildings or establishments whatsoever." And a later act approved February 24, 1891 (Laws 1891, p. 31), granted to the United States the consent of the state to the "acquisition by purchase or by condemnation . . . of any tract, piece, or parcel of land, from any individual or individuals, bodies politic or corporate, within the boundaries or limits of this state, for the sites of locks, dams, piers, . . . and other necessary structures and purposes required in the improvement of the rivers and harbors of this state, or bordering thereon, or for the sites of forts, magazines, arsenals, . . . and other needful buildings authorized by any act of congress, . . ." It was also provided that all deeds or title papers for the same should be recorded upon the rec-

ords of the county in which the land so acquired might be situated.    In each of the two acts last above mentioned, it was provided that the consent thereby given was in accordance with the seventeenth clause of the eighth section of the first article of the constitution of the United States, and with the acts of congress "in such cases made and provided."

It is contended on behalf of the defendant, that the several legislative acts hereinbefore mentioned and the deed from the state conveyed the fee to the United States; that the several acts referred to, and particularly the act of 1891, were broad enough to grant to the federal government a right of way for a canal and all other improvements incidental thereto; that the authorization contained in the act of January 23, 1890, and especially of the act of February 24, 1891, to purchase from bodies politic or corporate, is broad enough to authorize a purchase from the state; that these several laws and grants fully authorized and empowered the officers of the state to execute and deliver to the federal government the deed; that the acceptance of the deed by the federal government amounted to a purchase from a body politic or corporate of the lands described therein, within the meaning of the several acts above referred to; that the commissioner having authority to cancel leases, his cancellation of the lease in question inured to the benefit of the United States; that the interests forfeited reverted to the owner of the fee, and that whether the lease was rightfully or wrongfully cancelled, it cannot be reinstated, for the reason that the commissioner of public lands has no further control of the lands in controversy.

We have already expressed our views as to the meaning and effect of the act of March 20, 1890, and it is not necessary to repeat them; and as to the other acts mentioned we

will simply observe that, in our judgment, they are not justly susceptible of the comprehensive construction suggested by counsel for the defendant. Such construction is not fairly deducible either from the language used by the legislature or from the object or purpose of the respective acts. We do not think that it can reasonably be said that, when the legislature granted to the United States the *consent* of the state to acquire, by purchase or by condemnation, land from individuals or bodies politic, *within this state,* for specified purposes, they intended thereby to grant consent to purchase lands *from the state.* If such was their intention, we think they would have expressed it in plain and unequivocal language.

It is also contended on the part of the defendant that, even if the deed from the state was not warranted by the acts above referred to, the title to the lands therein described, as accepted for canal purposes, nevertheless passed to the United States, unincumbered by the lease of the relator, by virtue of the act of February 8, 1901 (Laws 1901, p. 7). That act granted to the United States the right to place, construct, maintain, and operate a ship canal . . . upon, along, through, and over any and all lands belonging to, and waters of, this state, in King county, for the purpose of connecting the waters of Lakes Union and Washington with Puget Sound. That act was passed long after the date of the execution of the deed in question, and presumably because the legislature thought the state was then the owner of the lands over which the canal therein mentioned might or would be constructed. It can hardly be construed as an attempt by the legislature to annul existing leases by the state to private parties. If that was its object, the act would have to be declared unconstitutional and void. The only possible effect of that act was to grant to the United

States whatever title the state had to the lands intended to
be thus granted. But, as the grant was general in its nature,
it may well be doubted that the legislature thereby intended
to convey to the government lands which they, by the act of
March 16, 1897, prohibited the state from selling or offer-
ing to sell, except to lessees, who have kept their leases in
good standing.

But, conceding that the fee passed from the state to the
United States by virtue of this grant, we do not think it
necessarily follows, as the defendant seems to contend, that
whatever rights the relator had in the premises were there-
by extinguished. We have hereinbefore endeavored to show
that the deed by the state officers was executed, and relator's
lease cancelled, without authority of law. And if this con-
clusion is correct, the attempted cancellation of the lease by
the then commissioner was a mere nullity, and the lease is
still, as we have already intimated, a valid and subsisting
contract, and should be so recognized by the defendant. It
is conceded that it is the duty of the commissioner of public
lands to receive the rent due and payable on leases of land
made by the state, if tendered at the proper time; and we
do not think that he can exonerate himself from such duty
by his own arbitrary and illegal act. Private property can
not be taken in this state, even for public purposes, "with-
out just compensation having been first made or paid into
court for the owner. Const. Art. 1, § 16. Nor can it be
arbitrarily confiscated either by the state or its officers.

We do not deem it necessary in this case to consider the
question of the effect of a patent or a grant by the govern-
ment as evidence of title, or of that of the proper procedure
by which the same may be set aside, as we think these ques-
tions are not necessarily involved in the cause. Our statute
provides that a writ of mandate may be issued by any court,

except a justice's or police court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust, or station, or to compel the *admission* of a party to the *use and enjoyment* of a right to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person. Bal. Code, § 5755. In view of this statute, it would appear that the relator is pursuing the proper remedy in this instance. And, as we are satisfied that the relator's affidavit states facts sufficient to entitle him to the relief demanded, the defendant's demurrer must be overruled, and it is so ordered. And as the defendant declines to plead further, it is ordered that the writ prayed for be issued.

FULLERTON, C. J., and DUNBAR, HADLEY, and MOUNT, JJ., concur.