[No. 5988.   Decided March 24, 1906.]

THE STATE OF WASHINGTON, *on the Relation of Marguerite H. Smith, Plaintiff,* v. E. W. ROSS, *as Commissioner of Public Lands, Defendant.*[1]

MANDAMUS—TO STATE OFFICERS—LEASE OF TIDE LANDS—REINSTATEMENT. Mandamus will lie to compel the commissioner of public lands to reinstate a lease and accept rent; since, under Bal. Code, §§ 2149-2155, the right of appeal is given only from decisions of the state board of land commissioners and not from orders of the commissioner.

PUBLIC LANDS—LEASE—FORFEITURE—NOTICE BY MAIL—STATUTES—CONSTRUCTION. Under Bal. Code, § 2155, requiring the commissioner of public lands to cause notice to be served on the lessees of public lands who may become delinquent within sixty. days, and if no response be had, to declare a forfeiture of the lease, notice may be given by mail, in view of the burden and impracticability of personal service on all state lessees, and of the settled practice of the office to make service by mail.

SAME—FAILURE OF NOTICE—CANCELLATION OF LEASE. Where the notice of delinquency mailed by the state land commissioner to a lessee of state lands fails to reach the lessee and is returned unopened, the commissioner has no authority to cancel the lease for nonpayment of rent; and a lessee paying within sixty days after a second notice is entitled to a reinstatement of a lease cancelled for nonpayment of rent.

Application filed in the supreme court December 12, 1905, for a writ of mandate to the state land commissioner to compel the reinstatement of a lease of public lands. Writ granted.

*Harold Preston* and *E. H. Guie,* for relator.

*The Attorney General,* and *A. J. Falknor, Assistant,* for defendant.

CROW, J.—This is an original application made to this court for a writ of mandamus to compel the defendant, as

1Reported in 85 Pac. 29.

State Land Commissioner, to reinstate a certain lease of tide lands, and accept the rent due thereon.

The relator alleges that on November 1, 1899, the state of Washington, by and through its then duly qualified and acting commissioner of public lands, executed and delivered to one V. Hugo Smith, the husband of relator, lease No. 311, for the period of thirty years, for certain tide lands of the first class in Seattle, King county, Washington; that on November 1, 1899, said V. Hugo Smith paid the sum of $24 rent on said lease for the first year of the term thereof, and paid the further sum of $24 each year in advance for the years commencing November 1, 1900, November 1, 1901, November 1, 1902, and November 1, 1903; that on the 10th day of February, 1903, said V. Hugo Smith assigned said lease to the relator; that said assignment was approved by the commissioner of public lands, and that the relator is now the owner of said lease as her separate property; that the relator believed the rent due on November 1, 1904, had been paid; that no notice as required by law was ever served upon her notifying her that said rent was due or would become delinquent, or that said lease would be forfeited for nonpayment, nor was any notice sent to the relator until November 10, 1905, when the defendant mailed a statement to the relator that rent was due for the years beginning November 1, 1904, and November 1, 1905; that said notice was received by the relator on November 15, 1905, who immediately caused said V. Hugo Smith to pay the defendant, as such commissioner, on November 17, 1905, the rent for said two years, amounting to $48, which said commissioner received; that on or about November 24, 1905, the relator for the first time learned said lease was marked cancelled under date of November 9, 1905, on the records of defendant's office; that at all times the relator has been acting in good faith, and that if the rent due on November 1, 1904, was not paid until November 17, 1905, it was through inadvertence

and for want of the notice required by law; that on December 6, 1905, the defendant attempted to return said rental, which the relator refused to receive; that on December 8, 1905, the relator demanded that said lease be reinstated, but that defendant then refused, and still refuses, to reinstate the same.

The defendant, commissioner of public lands, has demurred to said affidavit, and has also filed an answer in which he alleges that on November 16, 1904, there was mailed to said lessee by the defendant's predecessor in office a notice that $24 rent had become due on said lease on November 1, 1904, and that if the same was not paid within sixty days after due, said lease would be cancelled; that said notice was enclosed in an envelope, postage prepaid, addressed to Marguerite H. Smith, Colonial Block, Seattle, Wash., care of V. H. Smith, and was deposited in the United States postoffice at Olympia, Wash.; that on or about said date said Marguerite H. Smith left the city of Seattle to visit the St. Louis exposition, leaving instructions for her mail to be forwarded to the Inside Inn, at St. Louis, Mo.; that said letter was so forwarded; that she failed to call for the same at the Inn; that said letter was returned unopened to said S. A. Callvert, land commissioner, and was filed away and preserved in the records of his office; that afterwards, and while defendant was preparing his answer herein, an investigation of the files of his office disclosed that said letter containing said notice had been returned, and said original notice and envelope are attached to the answer herein; that said notice of November 10, 1905, mentioned in the affidavit as having been sent out by defendant was sent through inadvertence and without authority, by a clerk in defendant's office, and after the cancellation of said lease had actually been ordered; that prior thereto, about November 1, 1905, defendant had directed the clerks in his office to prepare a list of all tide land leases upon which rentals were then due

and unpaid; that about November 7, 1905, said list was completed, and included said lease No. 311, showing two years rent past due; that on the morning of November 9, 1905, and not at any other time, the defendant, as commissioner of public lands, entered upon said list, in his own handwriting, the words: "Ordered cancelled, Nov. 9th, 1905, E. W. Ross, Com."; that thereafter. defendant, as such commissioner, executed and entered in the records of his office an additional formal order cancelling said lease and many other leases; that afterwards, during the absence of the defendant from the city of Olympia, said V. Hugo Smith, on or about November 17, 1905, appeared at defendant's office and tendered $104 in attempted payment of rental on certain tide land leases, including said lease No. 311; that said money was not received by defendant's clerks in payment of rental, nor was the retention thereof so considered, as said lease had been cancelled, but said money was held awaiting the defendant's return and his order as to its disposition; that on December 6, 1905, defendant promptly addressed a letter to said V. Hugo Smith, and enclosing a draft for $104, returned said deposit, and notified him of the cancellation of said lease; that said Smith returned said draft, which is now in the defendant's possession, but is not held for payment of rentals.

By his demurrer, the defendant contends that this court has no jurisdiction of this proceeding, as the relator has a remedy by appealing to the superior court from the decision or action of the commissioner of public lands, citing § 1, chap. 62, Laws 1901, p. 98. Said section provides for an appeal from orders or decisions of the board of state land commissioners, but makes no reference to orders made by the commissioner of public lands. The defendant contends that, in drawing this appeal act of 1901, the legislature must have inadvertently overlooked the fact that in some instances actions therein contemplated are taken by the commissioner

of public lands alone, instead of the board; that it must have intended to allow an appeal to any one who was an applicant for a lease, or who was aggrieved by any action upon his lease; and that unless the statute be so construed as to give the right of appeal in such matters, whether or not the board or the commissioner made the order, the statute itself would become meaningless and not as broad as the legislature intended.

We do not think this contention can be sustained. At the time the act of 1901 was passed, Bal. Code, §§ 2149-2155, provided for the leasing of lands, and the forfeiture of leases by the commissioner of public lands, and 3 Bal. Code, § 2180, (Laws 1899, p. 139), provided that tide and shore lands might be leased in the same manner. The legislature, when providing for an appeal by the act of 1901, must be presumed to have known that the commissioner of public lands had authority to make and forfeit leases. If it intended to provide for an appeal from his order or decision it would certainly have so stated. For us to hold such a right of appeal to have been given, would be judicial legislation, as we would without authority or necessity be reading into the act words which were not placed there or intended by the legislature. The relator having no right of appeal, this court has jurisdiction, as mandamus will lie to compel the commissioner of public lands to reinstate a lease and accept rent. *State ex rel. Bussell v. Callvert*, 33 Wash. 380, 74 Pac. 573.

The relator, citing Bal. Code, § 2155, contends: (1) That before a lease can be forfeited notice of delinquency must be personally served upon a lessee, and that said notice cannot be served by mail; (2) that no notice of default of the rent due November 1, 1904, having been served upon the relator, either personally or by mail, the defendant had no authority to cancel her lease. Section 2155 of Bal. Code reads as follows:

"The commissioner of public lands shall keep a full and complete record of all leases so issued and payments made

thereon, and on the first of each and every month the commissioner of public lands shall cause notice to be served on lessees of public lands who may become delinquent on annual payment within sixty days, and therefore subject to forfeiture, and the commissioner shall forthwith, if no response be had, declare a forfeiture of the lease, and may eject the lessee therefrom."

This section is somewhat ambiguous, and its construction is not without difficulty, but after careful consideration we have concluded that it imposes a duty upon the commissioner of public lands to make an examination of the records of leases in his office on the first of each month for the purpose of ascertaining all leases upon which annual installments of rent will become due within the next succeeding sixty days, and to immediately give written notice thereof to the holders of all such leases. According to this construction, it would be his duty to give such notice before any default could occur, and without regard to the probability or improbability that one might or might not occur. This being true, we cannot hold that such notices must be served personally. The office of the state land commissioner is one of the most important departments of the state government, and it is common knowledge that it has issued thousands of leases for various classes of state lands. To hold that the legislature intended to impose upon the land commissioner the burdensome duty of causing a written notice to be personally served upon each and every lessee at least once a year would be unreasonable. We think the notice mentioned is intended to be in the nature of a reminder to the lessee, calling his attention to the installment of rent about to mature, and the liability of his lease to forfeiture, so that no default may occur, and that no other notice is required as a condition precedent to such forfeiture in the event of nonpayment of the rent within the time contemplated by the statute and fixed by the lease. Ordinarily where a statute requires the giving of notice, and there is nothing in the context of the law, or in the circum-

stances of the case, to show that any other notice was intended, the courts hold that personal notice must be given. 21 Am. & Eng. Ency. Law (2d ed.), p. 583; Wade, Law of Notice (2d ed.), § 1334. We think, however, that the peculiar character of this statute, its context, its use of the word "response," and all the circumstances, show it not to have been the intention of the legislature to require personal service on all of these lessees, whether in default or not. It inferentially appears, both from the affidavit of the relator and the answer of the defendant, and in fact may be taken as conceded, that for years the universal practice of the commissioners of public lands has been to serve these notices by mail. It is common knowledge that this custom has prevailed ever since said section was originally enacted in 1895. Laws 1895, p. 546. It was amended and re-enacted, without any substantial change in the matter of notice in 1897. Laws 1897, p. 244. Sutherland, in the second edition of his work on Statutory Construction, at section 474, says:

"The practical construction given to a doubtful statute by the department or officers whose duty it is to carry it into execution is entitled to great weight and will not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous. Says the supreme court of Oregon: 'In all cases where those persons whose duty it is to execute a law have uniformily given it a particular construction, and that construction has been acquiesced in and acted upon for a long time, it is a contemporary exposition of the statute, which always commands the attention of the courts, and will be followed unless it clearly and manifestly appears to be wrong.' The legislature is presumed to be cognizant of such construction, and after long continuance, without any legislation evincing its dissent, courts will consider themselves warranted in adopting that construction. And where the statute is re-enacted without change the presumption is strong that the legislature intended it to bear the same construction that had previously been given it."

We think service of notice by mail is a sufficient compliance with said section, for the further reason that where it has been addressed to the lessee in a sealed envelope, postage prepaid, with a return direction, and has been deposited in the United States postoffice and not returned to the sender, a strong presumption arises that it actually reached the person to whom it was addressed, and gave the notice intended. The relator's lease contains the following stipulation:

"The payment of the above mentioned annual rent to the Commissioner of Public Lands of the State of Washington yearly in advance is of the essence of this contract, and the same shall be, and is, a condition precedent to the execution and continuance of this lease or any rights thereunder, and if said annual rent shall not be paid within sixty days from the date due upon notice served by the Commissioner of Public Lands, this lease shall be null and void."

It will be noticed that under the provisions of Bal. Code, § 2154, all leases are to be drawn on a form prescribed by the attorney general. The form of this lease, the uniform practice of the land commissioner's office, the universal acquiescence on the part of the lessees all over the state and the above history of legislation, all appear consistent with our interpretation of said section 2155, Bal. Code. We therefore hold that the notice mentioned therein may be served by mail, and that under the provisions of said section, and the terms of the lease, if the annual rent be not paid after the service of such notice and within sixty days after due, the commissioner of public lands is authorized to declare a forfeiture without further notice.

Relator further contends that even though notice served by mail be a sufficient compliance with the provisions of said section 2155, nevertheless the commissioner of public lands had no authority to forfeit her lease, for the reason that no such service was made giving notice of the installment of rent falling due November 1, 1904. If by oversight or inadvertence the commissioner of public lands should fail or

neglect to mail the notice contemplated by said section in accordance with our interpretation, it would, upon discovery of such neglect, become his duty to mail the notice as soon thereafter as possible or practicable, as a condition precedent to a forfeiture.   In this instance it is shown that a notice was mailed in November, 1904, but it also affirmatively appears from the defendant's answer that this notice did not reach the relator, but was returned unopened, and that it was not discovered by the present commissioner until after the commencement of this proceeding.   The facts here disclosed show that the attempt to give notice by mail resulted in failure. The relator therefore is placed in the same position she would have occupied had no such notice been given or attempted. This being true, the defendant had no authority to forfeit her lease, payment having been actually made within sixty days after the mailing of the second notice in November, 1905.   The relator having immediately proceeded by mandamus, is entitled to have her lease reinstated and her rent received by the defendant.   The defendant, in good faith relying upon the records of his office, which showed notice to have been given in November, 1904, attempted the cancellation of this lease, and did so before the rent was paid in 1905. When he made this attempted cancellation he seemed to be justified in his belief that the notice required had been given in 1904.   The fact that the first notice mailed by his predecessor in office did not reach the relator did not come to his actual knowledge until the time for the preparation of his answer had arrived.   Thereupon he fairly and honestly presented in his answer a full, complete and exact history of this case to this court.   Upon the conceded facts, we think he was without authority to cancel the lease. .

It is therefore ordered that the writ prayed for be issued.

MOUNT, C. J., ROOT, DUNBAR, and HADLEY, JJ., concur.