[No. 6415. Decided October 30, 1906.]

THE STATE OF WASHINGTON, *on the Relation of E. A. Shores et al., Plaintiff,* v. E. W. Ross, *as Commissioner of Public Lands, Respondent.*[1]

PUBLIC LANDS—SALES—DEED—DELIVERY—FRAUD—POWER OF COMMISSIONER TO WITHHOLD DEED. The commissioner of public lands or board of land commissioners, has the power to withhold from delivery a deed of state lands after confirmation of the sale and execution of the deed, and to direct an investigation, where it is alleged that the same has been procured by fraud, misrepresentation or collusion.

APPEAL AND ERROR—HEARING—DECISION—MANDAMUS. Upon application for a mandamus in the supreme court, an issue as to whether a deed of state lands has issued through fraud and collusion will be referred to the superior court for trial.

Application filed in the supreme court September 17, 1906, for a writ of mandate to compel the commissioner of public lands to deliver a deed to tide lands, after confirmation of sale. Remanded for further proceedings.

*William H. Pratt* and *Walter Loveday*, for relators.

*The Attorney General* and *A. J. Falknor, Assistant,* (*E. M. Hayden*, of counsel), for respondent.

ROOT, J.—This is an application for an original mandamus on the part of the relators to require respondent to deliver to relators a deed to certain tide lands near the city of Tacoma. The relator E. A. Shores made an application for the purchase of these tide lands on the 9th day of January, 1906, making the necessary legal deposit. Said application stated that said lands were not occupied, and that there were no improvements thereon. Thereafter, a certificate of appraisal of the land was made out and filed and the land ordered sold. The usual notice of sale was given, as required by law, and the land sold to the relator E. A. Shores at public auction

[1]Reported in 87 Pac. 262.

on the 30th day of June, 1906, for a little more than the appraised valuation. The auditor of Pierce county made his report on the sale, and said relator paid the purchase price, and the board of state land commissioners confirmed the sale. On the 29th day of August, 1906, a deed was regularly made out and signed by the governor and attested by the secretary of state with the seal of the state attached thereto. Before said deed was delivered to relators, affidavits were filed in the office of the commissioner of public lands alleging that there were valuable improvements upon said tide lands, and it was charged that said relator had entered into collusion with other parties to stifle bidding at the time said lands were sold at public auction. Thereupon the said land commissioner, this respondent, referred said affidavit and the application and all the records, and matters thereto appertaining, to the board of state land commissioners, which board, on the 17th day of September, 1906, entered an order disapproving of said sale, and directing the commissioner of public lands to cause a reinspection of said lands to be made.

In answer to the application for the writ, respondent sets up all of these transactions and maintains that it is his duty, in order to protect the state from fraud and imposition, to decline to deliver said deed, and that, under the circumstances, he or the state board should withhold said deed until an investigation can be made as to the charges of fraud and misrepresentation preferred against the relator who made the application. Relators insist that neither the respondent nor the board of state land commissioners has any jurisdiction to make such an investigation, that their power over the subject-matter ceased when the deed was signed and attested by the governor and secretary of state. They insist that the power of these officials is thus limited by § 2198 of Bal. Code (P. C. § 8236), which reads as follows:

"The board of appraisers or commissions, or commissioner of public lands, shall have the right to review and to recon-

sider any of its official acts relating to lands of the state until such time as a lease or contract for purchase of any of said lands shall have been made, executed and signed by the commissioner of public lands or by the board itself."

Respondent contends that the expression "made, executed and signed" is equivalent to the words "made, executed and delivered" which are commonly found in deeds of conveyance, and urges that the deed is not "made and executed" until it is drafted, signed, acknowledged, and delivered, and that it was not the intention of the legislature to deprive the officers of the state of the power to deal with the subject as long as the deed was not actually delivered. Whether this contention of respondent can be upheld in its entirety we are not now called upon to decide; but we think that his position is tenable to the extent that the land commissioner, or the board of state land commissioners, may at any time refuse to deliver a deed when matters are brought to his or their attention which give reason to believe that said deed is being obtained by means of fraud. Fraud vitiates whatever it touches, and relators can insist upon no action by state officials when the grounds of their demand are based upon fraudulent transactions. It is the duty of these state officers to protect the state against imposition. The Laws of 1903, page 113, § 3 (Pierce's Code, § 8178a), provides:

"*Any sale or lease of state lands* made by mistake, or not in accordance with law, or *obtained by fraud or misrepresentation shall be void,* and the contract of purchase or lease issued thereon shall be of no effect, but the holder of such contract or lease shall be required to surrender the same to the commissioner of public lands, who shall, except in the case of fraud on the part of the purchaser, cause the money to be refunded to the holder thereof, . . ."

If the deed to these tide lands had been delivered after the respondent was reliably informed that the application and bidding were fraudulent, to the detriment of the state, it would be the duty of the respondent, or of some official of

the state, to immediately cause an action to be brought to
cancel said deed, and to recover the property, title to which
was thus fraudulently acquired. 26 Am. & Eng. Ency. Law
(2d ed.), 397 and note 1 ; 19 Am. & Eng. Ency. Law (2d ed.),
754-757, and notes. This being true, it follows that the de-
livering of the deed to relators would be an idle ceremony.
It is an accepted maxim that the law never requires the doing
of a useless thing. We cannot think that the legislature in-
tended to deprive the commissioner of public lands, or the
board of public land commissioners, of authority to examine
into charges of fraud preferred under circumstances such as
surround this case. The great volume of business transacted
in the office of the commissioner of public lands makes it im-
possible for the respondent, or other members of the board
of state land commissioners, to be at all times personally
familiar with the condition of every tract of state land
with which they have to do, and with the circumstances sur-
rounding every sale, and it is certainly not the policy of the
law that they should be handicapped in the exercise of func-
tions necessary to the state's protection. We hold that, at
any time prior to the actual delivery of the deed of convey-
ance, these officers, or any of them, may refuse to deliver a
deed when *bona fide* charges of fraud are properly interposed,
or when they themselves are in any way apprised of facts
which afford them good reason to believe that the applicant
has been guilty of fraud to the detriment of the interests of
the state.

The relators have filed herein an affidavit asserting that
there were no improvements, within the meaning of the law,
upon these tide lands at the time said application was made,
and deny that there was any collusion in the matter of the
bidding at the public auction. This raises issues of fact
which this court cannot conveniently determine. Respondent,
in his answer, prays that the action be dismissed, or that it
be referred to some superior court to take evidence and re-

port the facts to this court. If the relators have been guilty of no misrepresentation or fraud, they should be allowed to receive the deed to these lands, and the same should not be again offered for sale. We therefore think that it is but fair that the facts should be ascertained and reported to this court, whereupon an appropriate disposition will be made of the case.

It is therefore ordered that the superior court of Pierce county be, and it is hereby, authorized and directed to take evidence upon the questions of misrepresentation, collusion and fraud presented in this proceeding, and to make a return of the evidence and its findings thereupon to this court in due form and time. Either party hereto may call the matter on for hearing before said court, upon ten days notice in writing, duly served on the other side. Costs in this court, and in said superior court, to abide the final decision herein.

MOUNT, C. J., DUNBAR, CROW, HADLEY, and FULLERTON, JJ., concur.

RUDKIN, J., dissents.