[No. 10994. Department One. August 7, 1913.]

THE STATE OF WASHINGTON, *on the Relation of T. H. Adams et al., Respondent,* v. C. S. IRWIN, *Mayor of the City of Vancouver, Appellant.*[1]

MANDAMUS — PROCEEDINGS — PLEADING—JURISDICTION. A verified complaint with proper prayer for relief, is a sufficient compliance with Rem. & Bal. Code, § 1015, providing that the writ of mandamus must be issued upon "affidavit" on the application of the party beneficially interested, and confers jurisdiction to issue an alternative writ without issuance or service of a summons.

MUNICIPAL CORPORATIONS—POWERS—FUNDS—PURCHASE OF LANDS —PAYMENT. Under Rem. & Bal. Code, § 7685, providing that a city of the third class shall have power to purchase land for a cemetery, and to levy a tax from the general fund not exceeding sixty cents on each one hundred dollars, the purchase price of a cemetery be-

[1]Reported in 134 Pac. 484; 135 Pac. 472.

comes a charge upon the general fund, in the absence of any special
provision calling for payment from some other fund.

SAME—INDEBTEDNESS—LIMITATIONS.  Lack of money in the gen-
eral fund to meet a liability, is not a valid objection to incurring
the liability, when the constitutional limit of indebtedness is not
exceeded.

Appeal from a judgment of the superior court for Clarke
county, McKenney, J., entered July 30, 1912, upon findings
in favor of the plaintiff, in mandamus proceedings, after a
trial to the court.  Affirmed.

*Miller, Crass & Wilkinson,* for appellant.
*McMaster, Hall & Drowley,* for respondent.

PARKER, J.—This is a mandamus proceeding, wherein the
relators seek to compel the mayor of the city of Vancouver
to issue a warrant upon the general fund of that city, in pay-
ment of the purchase price of land sold by them to the city
for cemetery purposes.  Judgment was rendered in favor of
the relators, from which the defendant has appealed.

On May 3, 1911, the city, through its council, purchased
the land here involved from its then owners for the sum of
$10,347, when a warrant was issued to them in payment of
the purchase price and conveyance of the land made to the
city.  This warrant was sold by the owners to the Vancouver
National Bank.  Soon thereafter, a taxpayer of the city com-
menced an action in the superior court for Clarke county,
seeking to have payment of the warrant enjoined upon the
ground that the purchase of the land by the city was illegal
and void, in that one of its councilmen was at the time a
part owner of the land and received his due proportion of the
purchase price thereof.  Thereafter negotiations were entered
into between the bank and the city looking to a settlement
of the controversy, which resulted in the bank surrendering
the warrant to the city and the city conveying the land to
the relator T. H. Adams, the then president of the bank.  A
few days thereafter, the city council met and caused adver-

tisement to be made inviting proposals to sell to the city land for cemetery purposes. In response to this action of the city, there was received by it, among other proposals, one from the relator T. H. Adams, offering to sell to the city this same land for the sum of $10,347 with interest added thereto to be computed from the 10th day of May, 1911, which we assume was the day on which the bank purchased the warrant which it thereafter surrendered to the city. The council thereupon, on April 1, 1912, voted to accept this proposal and ordered the issuance of a warrant by the mayor and city clerk in payment of the purchase price which, upon computation of interest, was found to be $10,900.56. On the following day, April 2, 1912, the city clerk duly prepared a warrant drawn upon the general fund of the city for that sum, which warrant was presented to the mayor for his signature, when he refused to sign the same. This proceeding followed, resulting in judgment against appellant requiring him to sign and issue such warrant, when he appealed from such judgment, as we have above stated.

It is first contended by counsel for appellant that the court erred in denying his motion to quash the alternative writ of mandate, made upon the ground that the proceeding was not commenced by affidavit nor by complaint and summons. The allegations of the relators' cause of action were made in the form of a verified complaint, which was so designated in the caption thereof, instead of in the form of an affidavit. It was upon this verified complaint that the alternative writ of mandate was issued and served; there being no summons issued. Counsel concede that mandamus proceedings may, under our law, be instituted by the filing of a statement of relators' cause of action in either of these forms. *Smith v. Ormsby*, 20 Wash. 396, 55 Pac. 570, 72 Am. St. 110; *State ex rel. Cicoria v. Corgiat*, 50 Wash. 95, 96 Pac. 689. They insist, however, that, when the relators' cause of action is stated in the form of a complaint, the issuance and service of a summons upon the defendant is necessary to en-

able the court to acquire jurisdiction, and that it is only
when the relators' cause of action is stated in the form of an
affidavit that the court can acquire jurisdiction by the issu-
ance and service upon the defendant of an alternative writ
of mandate; and that, therefore, there was no authority for
the issuance and service of such a writ as the original pro-
cess in this proceeding.

It is true that Rem. & Bal. Code, § 1015 (P. C. 81 § 1757),
relating to the issuance of such a writ provides, "It must be
issued upon affidavit on the application of the party bene-
ficially interested." While the word affidavit in its narrow
and technical sense may be regarded as less comprehensive
than complaint, it seems to us that the word as here used is
a mere designation of the plaintiffs' or relators' first pleading
in which he is to state his cause of action, and that when he
has stated his cause of action, either in the form of a verified
complaint or of an affidavit, such a statement, with proper
prayer for relief, is sufficient to authorize the court to pro-
ceed to acquire jurisdiction by the issuance and service of
an alternative writ of mandate. We conclude that the appel-
lant's motion to quash the writ was properly denied by the
trial court.

Some contention is made against the power of the city
council to incur obligation by the city to pay the purchase
price of the land to be used for cemetery purposes. Van-
couver is a city of the third class. Referring to Rem. & Bal.
Code, § 7685 (P. C. 77 § 323), relating to the powers of the
councils of such cities, we read:

"The city council of such city shall have power. (2)
. . . To purchase and plat land for the purpose of cem-
eteries and to provide by ordinance for the regulation there-
of. . . . (9) To levy and collect annually a property
tax, which shall be apportioned as follows: For the general
fund, not exceeding sixty cents on each one hundred dollars;
for street fund, not exceeding thirty cents on each one hun-
dred dollars, and for sewer fund, not exceeding ten cents on
each one hundred dollars. The levy for all purposes for any

one year shall not exceed one dollar on each one hundred dollars of the assessed value of all real and personal property within such city."

This latter subdivision, counsel insists, is the only tax-levying power the city council possesses, and they urge that there is not found therein any authority to raise revenue for the purchase of land for cemeteries. It seems to us it must be regarded as elementary law that when a municipality is given power to purchase property for some specific purpose, as such power is clearly given to Vancouver by subdivision 2 above quoted, it necessarily follows that the purchase price of such property becomes a charge upon the general fund of such city, in the absence of some special provision calling for payment from some other fund. Manifestly, all lawful obligations of a municipality are payable from its general fund, unless the law specifically provides otherwise. We are of the opinion that the purchase price of this land is payable out of the general fund of the city.

Some contention is rested upon the alleged want of showing that there is money in the general fund of the city available for the payment of the warrant sought to be issued. This, it is claimed, is manifest by the failure of proper allegations in the complaint and also by failure of proof on the hearing. It is not claimed or even suggested that the incurring of this indebtedness would exceed the 1½ per cent debt limit imposed upon municipalities by § 6, art. 8 of the constitution which may be incurred by their proper constituted authorities without a vote of the people. This being the case, we are wholly at a loss to understand how the fact that there may not be at present in the general fund of the city sufficient money to pay such warrant can have any bearing upon the question of the legality of its issuance. Our attention has not been called to any provision of law that prohibits the issuance of warrants upon the general fund of the city for a lawfully incurred obligation thereof because of the want of money in such fund to pay for such warrant, nor do we know

of any such restriction; and since it is not claimed that the constitutional debt limit will be exceeded by the issuance of this warrant, it seems clear to us that this contention is wholly without foundation.

It is finally contended by counsel for appellant that the evidence introduced upon the trial calls for the conclusion that the purchase of this land from the relators is, in substance, only an attempt to cure the illegality of the first sale; and that the councilman who was interested in the land at the first sale is also in fact interested in this sale, he still being a member of the council, which renders this sale illegal in the light of Rem. & Bal. Code, § 7702 (P. C. 77 § 363), and our decision in *Gantenbein v. Pasco*, 71 Wash. 635, 129 Pac. 374, 131 Pac. 461. The trial court found against appellant upon this question, and a careful review of those portions of the evidence to which our attention has been called convinces us that there is no ground for disturbing such finding. We agree with the trial court that appellant failed to show that any of the councilmen had any pecuniary interest whatever in the bringing about of this second sale. We conclude that the relators are entitled to a warrant upon the general fund of the city in the sum of $10,500.56 as of the date of the judgment rendered against the appellant, to wit, July 30, 1912, and that the judgment should be affirmed. It is so ordered.

We find among the exhibits brought here with the statement of facts a deed of conveyance for this land duly executed by the relators to the city, being plaintiffs' exhibit 8. This, we understand, is the deed which was tendered to the city by the relators at the time of demanding their warrant on April 2, 1912. The clerk of this court is directed to return this deed to the clerk of the superior court for delivery to the city upon the issuance of the warrant in compliance with the judgment.

GOSE, MOUNT, and CHADWICK, JJ., concur.

ON PETITION FOR REHEARING.

[*En Banc.* October 9, 1913.]

PER CURIAM.—Counsel for respondents, in a petition for rehearing, call our attention to what are manifestly clerical errors in our statement of the amount of the warrant respondents are entitled to, and also the date as of which they are entitled to such warrant. In our opinion filed on August 7, 1913, we said:

"We conclude that the relators are entitled to a warrant upon the general fund of the city in the sum of $10,500.56 as of the date of the judgment rendered against the appellant, to wit, July 30, 1912, and that the judgment should be affirmed."

A reference to the judgment of the learned trial court, which we have affirmed, will readily show that neither this statement of the amount or date is correct. The language above quoted from the opinion may therefore be considered as stricken therefrom, and in lieu thereof we will simply state that the judgment is affirmed. The judgment, upon its face, specifies the amount of the warrant respondents are entitled to, and also shows the date, when taken in connection with the record, as of which respondents are entitled to such warrant.

Respondents' petition for rehearing does not need further notice, and in view of the fact that the questions we are now disposing of relate only to these clerical errors, we deem it unnecessary to grant a rehearing.