[No. 28314.   Department One.   April 12, 1941.]

THE STATE OF WASHINGTON, *on the Relation of Pacific Bridge Company et al., Plaintiff,* v. WASHINGTON TOLL BRIDGE AUTHORITY *et al., Respondents.*[1]

[1] Reported in 112 P. (2d) 135.

338

*Loren Grinstead* and *Arthur Grunbaum,* for relators.

*The Attorney General, Oliver Malm* and *George R. Stuntz, Assistants,* for respondents.

DRIVER, J.—This is an original application for a writ of mandamus whereby the relators, the three corporations which constructed the Narrows bridge in Pierce county, seek to compel the Washington toll bridge authority and the state officers who are its members to issue and approve vouchers and draw warrants for payment of the balance due on the construction contract.

It appears from the pleadings and the briefs that the following facts are not in dispute:

On November 25, 1938, the toll bridge authority entered into a contract with relators for the construction of a suspension-type bridge across a reach of Puget Sound near Tacoma, commonly known as "The Narrows." The contract contained the usual provision for retention by the authority of a certain percentage of the contract price for a period of thirty days after completion of the work and acceptance thereof by the state director of highways.

The bridge was substantially completed on July 1, 1940, when the authority took possession, opened it to public travel, and began the collection of tolls. On October 29, 1940, the acting director of highways issued a final estimate establishing a balance due the relators of $619,915.41; and, on the same day, the authority approved such final estimate for payment.

On November 7, 1940, the bridge collapsed. On November 23rd, the insurance companies which had insured the structure gave the following written notice to the authority:

"We further confirm having advised you of the importance of the Authority refraining from taking any action which could or might be construed as an acceptance of the work under said contract, or as a release of the contractors or their performance bond and sureties thereon from any responsibility otherwise theirs, arising out of the collapse of the bridge, and it is our understanding that no such action is contemplated by the Authority."

Since its receipt of this notice, the authority has done nothing further toward payment of the balance due the relators, although no claim of any kind has been filed against the retained portion of the contract price. At the time of the filing of respondents' answer, the authority had only $243,000 on hand in its construction fund.

The Washington toll bridge authority was established and its powers and duties prescribed by the Laws of 1937, chapter 173, p. 654, Rem. Rev. Stat., Vol. 7A, § 6524-1 [P. C. § 2697-501] *et seq.* It is composed of the governor, the state auditor, the director of public service, the director of highways, and the director of finance, business and budget, all of whom act *ex officio* and receive no additional compensation by virtue of authority membership or service. A ma-

jority of the members is authorized to act for the authority (§ 6524-2 [P. C. § 2697-502]).

The authority is empowered to construct toll bridges "upon any public highways of this state" (§ 6524-3 [P. C. § 2697-503]), and to pay for the same from any available funds (§ 6524-4 [P. C. § 2697-505]) procured from the sale of revenue bonds (§§ 6524-7, 6524-8 [P. C. §§ 2697-508, 2697-509]), and to fix and collect toll charges to retire the bonds and meet the expenses of operation and maintenance of the improvements (§ 6524-9 [P. C. § 2697-510]). The statute further provides (§ 6524-14 [P. C. § 2697-515]) that:

"Monies required to meet the costs of construction and all expenses and costs incidental to the construction of any particular toll bridge or toll bridges or to meet the costs of operating, maintaining and repairing the same, *shall be paid from the proper fund therefor by the state auditor upon voucher submitted by the director of highways approved by the Washington Toll Bridge Authority.*" (Italics ours.)

Relators maintain that they are entitled to a writ of mandate to compel performance of the ministerial acts necessary to effect final payment on their contract. They also seek recovery of costs, and, by way of damages, interest and attorneys' fees.

The jurisdiction of this court should first be considered, although it is not questioned by respondents, since it cannot be conferred, in original mandamus, by stipulation, assent, or waiver. Art. IV, § 4, of the state constitution (its statutory counterpart is Rem. Rev. Stat., § 1 [P. C. § 8666]) provides: "The supreme court shall have original jurisdiction in habeas corpus and quo warranto and mandamus as to all state officers, . . ."

Respondent authority is a state agency. State officers acting *ex officio* comprise its entire membership. The instant case involves certain duties of the mem-

bers of the authority which the law has imposed upon them solely because they are state officers. Therefore, the respondents are subject to the jurisdiction of this court in original mandamus under the constitutional provision above quoted. *State ex rel. North Coast Fire Ins. Co. v. Shively*, 68 Wash. 148, 122 Pac. 1020; *State ex rel. Dunbar v. State Board*, 140 Wash. 433, 249 Pac. 996; *State ex rel. Edelstein v. Foley*, 6 Wn. (2d) 444, 107 P. (2d) 901.

The next question is whether this court should, in the exercise of its discretion, assume jurisdiction and consider the present case upon its merits.

It is a well-established practice to decline the assumption of original jurisdiction in either *habeas corpus* or mandamus proceedings except in cases which involve the interests of the state at large, or of the public, or when it is necessary in order to afford an adequate remedy. *State ex rel. Ottesen v. Clausen*, 124 Wash. 389, 214 Pac. 635; *In re Emch*, 124 Wash. 401, 214 Pac. 1043; *In re Miller*, 129 Wash. 538, 225 Pac. 429; *State ex rel. LaFollette v. Hinkle*, 131 Wash. 86, 229 Pac. 317; *State ex rel. Goodwin v. Savidge*, 133 Wash. 532, 234 Pac. 1; *In re Cavitt*, 170 Wash. 84, 15 P. (2d) 276.

In the *Ottesen* and the *Goodwin* cases just cited, the court quoted with approval from 18 R. C. L. 101, § 15, as follows:

" 'Though the state courts of last resort are given original jurisdiction to issue writs of mandamus, and under such a grant have in many instances exercised such jurisdiction frequently without their jurisdiction being questioned, it does not follow that such courts whose principal function is to exercise appellate or supervisory jurisdiction will assume original jurisdiction in all cases in which their aid may be sought and which otherwise may be a proper case for the use of the remedy. And in this connection

the established rule seems to be that as original jurisdiction is conferred in order that the court of highest authority in the state should have the power to protect the rights, interests and franchises of the state, and the rights and interests of the whole people, to enforce the performance of high official duties affecting the public at large, and, in emergency (of which the court itself is to determine), to assume jurisdiction of cases affecting local public interests, or private rights, where there is no other adequate remedy, and the exercise of such jurisdiction is necessary to prevent a failure of justice, the court is vested with a sound legal discretion to determine for itself, as the question may arise, whether or not the case presented is of such a character as to call for the exercise of its original jurisdiction.' "

The toll bridge authority is a state agency (although a separate entity, as we shall point out later), and the general public has an interest in its transactions and affairs. It builds bridges (and tunnels) which public convenience or necessity requires upon the public highways only. The structures which it constructs become integral and important parts of the state highway system. We think that, under the circumstances, assumption of jurisdiction is warranted.

Passing to the merits, respondents contend the writ should not issue because:

(1) The situation was one which called for the exercise of "administrative discretion relating to a governmental function" rather than the performance of a ministerial duty on the part of the authority and its members; and (2) the authority's lack of sufficient funds to pay the respondents the full balance due them constitutes a defense at least to the extent of the shortage. We shall discuss these two contentions in the order stated.

It is true that, in the absence of capricious or arbitrary action, mandamus does not lie to control the

discretionary power of administrative or executive officers. *State ex rel. Cowles v. Shively*, 63 Wash. 103, 114 Pac. 901; *Morris v. Favor*, 134 Wash. 75, 234 Pac. 1040; *State ex rel. Clithero v. Showalter*, 159 Wash. 519, 293 Pac. 1000 (appeal dismissed, 284 U. S. 573, 76 L. Ed. 498, 52 S. Ct. 15); *State ex rel. Boyle v. Ernst*, 195 Wash. 214, 78 P. (2d) 526; and *King County v. Martin*, 2 Wn. (2d) 504, 98 P. (2d) 686. The rule, however, does not apply to the case at bar. The work was completed and accepted, in accordance with the terms of the contract, by the acting director of highways, and there is nothing whatsoever before us to indicate any mistake, bad faith, or fraud on his part in so doing. Nothing remains to be done except the purely ministerial acts necessary to effect payment of the balance of the contract price. The naked demand of the insurance companies that such payment be withheld does not change the situation. So far as the record shows, neither the companies nor the respondents claim that the relators in any way breached or failed to perform the construction contract or that the collapse of the bridge was due to any fault of theirs.

The other contention of respondents is that, since the authority had on hand only $243,000, it could not be compelled to pay the relators a greater sum.

We do not consider it necessary to review the cases which respondents have cited on this point, as they hold merely that public officials will not be compelled to *pay money* which they do not have. Here, we are concerned with the question whether such officials may be compelled to *issue warrants* in furtherance of payment.

The toll bridge authority act, in effect, directs the issuance of warrants to pay construction costs. It provides (§ 6524-14) that such costs "shall be paid

from the proper fund therefor by the state auditor upon voucher" which has been approved by the authority. The quoted portion of the statute should not be too literally construed. Manifestly, it would be impossible for the auditor directly to pay out funds of the authority, because such funds are not in his custody, but are kept by the state treasurer. We think the legislature intended that the authority's construction funds should be disbursed in the same manner as state funds, namely, on warrants issued by the auditor and presented for payment to the state treasurer (see Rem. Rev. Stat., § 11019 [P. C. § 6691], subd. 2); and the warrants should be issued notwithstanding the fact that there is presently not a sufficient amount in the construction fund to pay them. *State ex rel. Adams v. Irwin,* 74 Wash. 589, 134 Pac. 484, 135 Pac. 472; *State ex rel. Helander v. Clausen,* 98 Wash. 253, 167 Pac. 947; *State ex rel. Shuff v. Clausen,* 131 Wash. 119, 229 Pac. 5; *Symons v. United States,* 252 Fed. 109.

■■ The only question remaining for consideration is the extent of the recovery to which relators are entitled.

There are two classes of mandamus in this state, one under Art. IV, § 4, of the constitution, which gives this court original jurisdiction; and the other, commonly known as the statutory mandamus, under Rem. Rev. Stat., § 1013 [P. C. § 8186] *et seq.,* which provides that (§ 1014 [P. C. § 8187]) the writ may be issued by any court, except a justice court or a police court, "to any inferior tribunal, corporation, board or person . . ."

Rem. Rev. Stat., § 1024 [P. C. § 8198], provides that, in statutory mandamus, the successful applicant shall recover the damages which he has sustained, as found by the court or the jury, "together with costs." No

statute has been cited, and we believe there is none, which directly provides for allowance of damages, costs, or attorney's fee to the successful applicant in a constitutional mandamus action.

In *State ex rel. Godfrey v. Turner,* 113 Wash. 214, 193 Pac. 715, this court pointed out that statutory mandamus and constitutional mandamus are two separate and distinct types of action. There has not been called to our attention any case in which this court has specifically held that the statutory mandamus provisions (Rem. Rev. Stat., § 1013 *et seq.*) also apply to constitutional mandamus, although such provisions were discussed and considered as though they were applicable in the following cases: *State ex rel. Bussell v. Callvert,* 33 Wash. 380, 74 Pac. 573; *State ex rel. Osborne, Tremper & Co. v. Nichols,* 38 Wash. 309, 80 Pac. 462; *State ex rel. Pelton v. Ross,* 39 Wash. 399, 81 Pac. 865; *State ex rel. Gillette v. Clausen,* 44 Wash. 437, 87 Pac. 498.

Costs have been awarded to the prevailing party in both statutory and constitutional mandamus proceedings pursuant to the statute (Rem. Rev. Stat., § 1024) and even without reference to it. *State ex rel. Middlebrook v. Reid,* 17 Wash. 267, 49 Pac. 517; *State ex rel. Shores v. Ross,* 44 Wash. 246, 87 Pac. 262; *State ex rel. Howe v. Kendall,* 44 Wash. 542, 87 Pac. 821; *State ex rel. Maltbie v. Will,* 54 Wash. 453, 103 Pac. 479, 104 Pac. 797.

In the last cited case, however, it was held that, in a statutory mandamus action, the successful applicant could not recover a reasonable attorney's fee as damages, but only the statutory attorney's fee.

Relators maintain that they are entitled to interest on the balance due them at the legal rate from November 29, 1940, the date on which their final estimate should have been paid.

Respondents, on the other hand, point out that the state cannot, without its consent, be subjected to the payment of interest on its debts. *Spier v. Department of Labor & Industries,* 176 Wash. 374, 29 P. (2d) 679; *Horton v. Department of Labor & Industries,* 199 Wash. 212, 90 P. (2d) 1009. In the cited cases, the rule was applied to the debts of the department of labor and industries on the ground that it was an agency of the state exercising governmental functions.

The toll bridge authority is also an agency of the state, closely connected with it in its functions, but, nevertheless, is a distinct legal entity separate and apart from the state. Its separate status is indicated by the following provisions of the statute which created it: The authority's bonds are not obligations of the state (§ 6524-7), its funds are not state funds, but are placed in the custody of the state treasurer, as trustee, to be kept "segregated and set apart from all other funds" (§ 6524-14); *and the authority is authorized to enter into contracts with the state* (§§ 6524-7, 6524-3a (Sup.) [Laws of 1939, chapter 5, p. 11, § 4]).

Moreover, the statute, considered as a whole, created a state agency to build bridges and tunnels on private capital, and, in that connection, empowered it to sell bonds, make and execute construction contracts, fix and collect tolls, and retire its bonds, all without substantial capital expenditure or obligation on the part of the state. Surely, the immunity which protects a sovereign state from liability for interest on its debts without contractual or statutory authorization should not be extended to such an agency.

In *National Volunteer Home v. Parrish,* 229 U. S. 494, 57 L. Ed. 1296, 33 S. Ct. 944, a contractor erected buildings for the National Home for Disabled Volunteer Soldiers, a Federal corporation created by act of Congress. The question presented was whether or

not the contractor was entitled to interest on the amount found to be due him. It was urged that, since interest was not recoverable against the United States without its consent, a like exemption applied to the home as a governmental agency. The court held that, although the home was without capital stock, was under the ultimate supervision of Congress, was supported and maintained from the national treasury, and was "essentially a governmental agency," yet it was subject to payment of interest because it was a distinct corporate entity with the power to sue and be sued, contract and otherwise transact business on its own account and in its own name. The case is closely analogous to the case at bar.

We conclude that relators are entitled to a writ of mandamus directing respondents to execute, issue, and approve vouchers, and directing respondent state auditor to issue warrants thereon for the balance due the relators, namely, the sum of $619,915.41, with interest thereon at the legal rate from November 29, 1940. Relators are also entitled to recover their costs, including a statutory attorney's fee, from respondent Washington toll bridge authority only.

Let the writ issue.

ROBINSON, C. J., STEINERT, MAIN, and BLAKE, JJ., concur.

### ON REHEARING.

[*En Banc.* June 30, 1941.]

PER CURIAM.—Upon a rehearing *En Banc,* the court adheres to the Departmental opinion heretofore filed herein.