[No. 3330.   Decided November 13, 1899.]

GWIN HICKS, *State Printer,* v. GEORGE H. KING *et al.,* *Board of Regents of University of State of Washington.*

STATE PRINTING BOARD—POWER OVER APPROPRIATIONS BY LEGISLATURE.

Laws 1893, p. 214, providing for a state printing board and granting such board full power to adopt such rules and regulations for the transaction of its business as it may deem necessary, does not contemplate that such board shall have power to direct the funds from which printing bills shall be paid; hence, a rule adopted by them to the effect that all bills for printing for institutions located outside the capital shall be paid from the maintenance fund of such institutions is an unwarranted exercise of legislative power, where such power has not been delegated to the board by statute.

*Original Application for Mandamus.*

*Thomas M. Vance,* for relator.

*Richard Winsor,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—On the 3d day of December, 1897, requisition was made by the respondents, the regents of the university of the state of Washington, on the state printer, for printing and binding five hundred copies of a catalogue for use by the said institution. The requisition was duly executed by the state printing board, with instructions to the state printer to print the same, and on said requisition said state printing board noted a memorandum

that said printing was to be paid for out of the maintenance fund of the said state university. The catalogues were printed, and the bill of the printer for performing the work, viz., $70.83, was audited and passed upon by the secretary of state. The work was done to the satisfaction of the university and of the printing board. Said bill was forwarded to the respondents, the board of regents of the university of the state of Washington, with the request that they audit the same and issue vouchers for the amount of said bill in favor of the relator, Gwin Hicks, upon which the auditor of state might issue his warrants against the maintenance fund of the state university in payment of said bill. The respondents refused to audit the bill or to issue vouchers for the same; whereupon this writ was prayed for to compel the performance of that alleged duty.

An answer was filed by the respondents, admitting that the requisition was approved by the printing board, and that the catalogues were subsequently printed by the relator as state printer, and furnished the university of Washington through its proper officers, but denying that said printing board had any authority to appropriate funds for the purpose of paying for said printing, or to designate any other funds out of which bills for state printing approved by it should be paid; denying that this bill was a proper charge against the fund appropriated for the maintenance of the state university; asserting that all such bills are payable solely and only out of the funds appropriated for that purpose, on which the state auditor is by law authorized to draw his warrants upon the presentation to him of the certified duplicate of the bill audited by the secretary of state. To this answer the relator interposed a demurrer, to the effect that the answer set up no sufficient defense to the complaint.

It is insisted by the relator that the university of Washington is a state institution, and that the work under con-

sideration here is public printing. These propositions are admitted by the respondents, so that it will not be necessary to discuss them here. The contention of the relator is based principally upon chapter 87 of the Laws of 1893 (p. 214), an act relating to the public printing. This act amends the act of 1890, providing that all printing, bookmaking, and binding required by any officer, institution, board, or commission of the state of Washington, except printing in newspapers and legislative printing, shall be done under the supervision of the board to be known as the "state printing board," consisting of the governor, secretary of state, and state treasurer, of which the governor shall be *ex officio* chairman; and the especial power conferred upon this board upon which the relator relies is as follows: "Said board shall have full power to adopt such rules and regulations for the transaction of its business as by it may be deemed necessary." In 1895 the board adopted a rule to the effect that the public printing should be paid for out of the funds appropriated for the maintenance of state institutions, excepting those which were located at the capital of the state, and it is insisted that, under the authority above quoted, this rule was warranted.

We do not think this conclusion is justified by the statute. We have been unable to find either any specific discrimination made by law in relation to the payment of printing bills for state institutions outside of the capital, or anything which could logically lead up to such conclusion. The law provides, it is true, that the printing shall be done under the supervision of the board. It also provides what the duty of the board is, viz., to determine what stationery and printing shall be furnished every state officer, institution, board, or commission, and to examine all matters for biennial reports of state officers, institutions, boards, or commissions, and reject therefrom all unnecessary verbiage or statistics, and provides that the

officer, institution, board, or commission so reporting shall be bound by the action of the majority of such board in the rejection of such unnecessary matter. It was for the purpose of the proper transaction of such business as this that the statute provided for the adoption of rules and regulations, and not for the purpose of giving the board any legislative discretion as to what fund particular bills should be paid out of. There is nothing in any act of the legislature that indicates that it was the intention that the general appropriation bill for printing should be exclusively used for the benefit of the supreme court and the executive department, and it might as consistently be urged that the printing of those departments should be paid for out of the maintenance funds provided for them as that the printing of the university should be paid for out of its maintenance fund. So far as the adequacy of the appropriation is concerned, that is a matter entirely for legislative discretion and not for judicial determination or construction. In any event, there is no authority of law for the board of regents to audit and allow these bills. Their duty is fulfilled when they make the requisition. The law especially provides that it is the duty of the state auditor to draw warrants of this kind; for the law makes it his duty and right to draw the warrant upon any fund out of which it is payable. If this application for mandate could be entertained at all, it should run against the auditor of the state instead of against the board of regents. But, as we have before indicated, we think that the board exceeded its authority in legislating upon the question as to what fund such bills should be paid out of. It is urged by the relator that the construction contended for by him was a construction placed upon the law by the department into whose keeping the public printing was confided, and it is true that great respect should be paid to the opinions of departmental officers in relation to matters over which they

have especial control, and in which, in determining the intention of the law makers, they have peculiar advantages. But this rule can be invoked only when there is reasonable doubt as to the construction to be given the statute, and in this instance we think the statute is not susceptible of construction, and that the power exercised by the board was palpably unwarranted.

The demurrer will be overruled and the application for the writ denied.

GORDON, C. J., and FULLERTON, ANDERS and REAVIS, JJ., concur.