## In re TROY PRESS CO.

(Supreme Court, Appellate Division, Third Department.  May 11, 1904.)

1. SESSION LAWS—PUBLICATION—DESIGNATION OF PAPER BY COUNTY SUPERVISORS.

Under County Law, Laws 1892, p. 1749, c. 686, § 19, as amended by Laws 1900, p. 933, c. 400, providing that the members of the board of supervisors in each county representing each of the two principal political parties thereof shall designate a paper representing the party to which they belong to publish the Session Laws and concurrent resolutions of the Legislature, a designation may not be for more than one year.

2. SAME—REPEAL OF STATUTES.

The legislative law (Laws 1892, p. 1679, c. 682) by section 48 provides that the Secretary of State shall send to each newspaper designated by county supervisors copies of the laws to be published by them; by section 80 (page 1689) expressly repeals Laws 1845, p. 305, c. 280, and the amendments thereto; and by section 81 provides it shall not take effect till October 1, 1892. It was approved May 18, 1892, on which day the county law (Laws 1892, p. 1749, c. 686) was approved, which, by section 19, provided for designation by the county supervisors of newspapers to publish the laws, and which, by its terms, took effect immediately. Three days later Laws 1892, p. 1470, c. 715, in terms amending Laws 1845, p. 305, c. 280, an act for publication of Session Laws, was approved, which, by section 3, provided when the supervisors should designate the papers to publish the laws.  Statutory Construction Law, Laws 1892, p. 1492, c. 677, § 33, provides that no provision of any chapter of the revision of the general laws, of which this chapter is a part, shall supersede or repeal by implication any law passed at the same session at which any such chapter was enacted after the enactment of any such chapter and before it shall have taken effect, and an amendatory law passed at such session before any such chapter takes effect shall not be deemed repealed unless specifically designated in the repealing schedule. Laws 1898, p. 1013, c. 349, amends County Law, Laws 1892, p. 1749, c. 686, § 19; and Laws 1900, p. 933, c. 400, further amends it, so that it is a full, complete, and independent enactment on the subject-matter, treating the designation of newspapers to publish Session Laws as the act of the supervisors in conformity with the plan of the county law and the legislative law, as distinguished from the provisions of the act of 1845 and the amendments thereto.  Held that, while Laws 1892, p. 1470, c. 715, was not superseded by, but itself superseded the similar provisions in, the county and legislative laws, passed earlier at the same session, County Law, Laws 1892, p. 1749, c. 686, § 19, as amended in 1900, intended to sum up the whole law on the subject of the designations of papers to publish the laws, superseded and repealed by implication Laws 1892, p. 1470, c. 715, § 3.

3. MANDAMUS—TO CLERK OF BOARD OF SUPERVISORS.

It being the duty of the clerk of the board of supervisors, without any power to exercise discretion, on the conceded facts, to certify to the Secretary of State a certain paper as designated by the supervisors to publish the Session Laws, and he having neglected and refused to do so, mandamus will lie to him.

Appeal from Special Term, Albany County.

Application by the Troy Press Company for mandamus to the clerk of the board of supervisors of Rensselaer county, the Troy Observer Publishing Company being made a party.  From an order refusing the writ, relator appeals.  Reversed.

On the 4th day of November, 1901, a board of supervisors was elected in the county of Rensselaer for a period of two years to commence January 1,

1902, and end on the 31st day of December, 1903. Included in said board
so elected were 12 Democrats. On the 14th day of October, 1902, a majority
of said Democratic members of said board filed with the clerk of said board
of supervisors a designation of newspapers, duly signed by such majority, of
which the following is a copy:

"We, the Democratic members of the Board of Supervisors of the County
of Rensselaer, pursuant to chapter 400 of the Laws of 1900, do hereby desig-
nate the Troy Observer as one of the newspapers to publish the Session Laws
and Concurrent Resolutions of the Legislature of the State of New York of
1903 and 1904 required by law to be published."

On the 21st day of November, 1902, said clerk forwarded to the Secretary
of State a notice stating that the Troy Observer had been selected as the
Democratic paper to publish the Session Laws and concurrent resolutions of
the Legislature for the year 1903, and pursuant to such notice the Secretary
of State transmitted to said Troy Observer the Session Laws and concurrent
resolutions for the year 1903, and said laws and resolutions were published
in said paper for that year. On or about the 14th day of November, 1903,
said clerk received from the Secretary of State a communication requesting
him to forward to said Secretary of State the names of the newspapers
designated by the board of supervisors of Rensselaer county to publish the
Session Laws of 1904, and on the 18th day of November, 1903, said clerk
executed and filed with the said Secretary of State a certificate of which the
following is a copy:

"I hereby certify that the following named newspapers were duly desig-
nated pursuant to the provisions of Chapter 715 of the Laws of 1892 and the
laws amendatory thereof, to publish the Session Laws of 1904 in the county
of Rensselaer, viz.:

| Names of Newspapers Appointed. | Place of Publication. | For Which Political Party Appointed. |
|---|---|---|
| Troy Observer | Troy, N. Y. | Democratic |
| The Troy Times | Troy, N. Y. | Republican." |

On or about the 1st day of December, 1903, a majority of said Democratic
members of said board of supervisors signed a designation of newspapers, of
which the following is a copy:

"We, the undersigned Democratic members of the Board of Supervisors of
the County of Rensselaer, pursuant to Chapter 400 of the Laws of 1900 and
Chapter 280 of the Laws of 1845, as amended by Chapter 715 of the Laws of
1892, do hereby designate the Troy Daily Press a daily newspaper published
in the city of Troy in said county (the said Press being a newspaper fairly
representing the political party to which we belong) as one of the newspapers
to publish the Session Laws and the Concurrent Resolutions of the Legislature
of the State of New York of 1904 required by law to be published."

The last-mentioned designation was signed by five of the same Democratic
members of said board that had previously signed the designation so filed
October 14, 1902. Said clerk refused to recognize the designation of the Troy
Daily Press, but on or about the 16th day of December, 1903, addressed a
communication to the Secretary of State, and included in such communication
a copy of the designation so filed with him, and at the end of his communica-
tion said: "I contend that I have no right to determine between these papers,
and, having certified to the one designated at the time I received your request,
I cannot consistently certify to another." The designation of December 1,
1903, was duly filed with the clerk of the board of supervisors on the 3d
day of December, 1903.

Prior to the commencement of this proceeding a formal demand in writing
was made upon said clerk that he notify the Secretary of State that the Troy
Daily Press had been designated by a majority of the Democratic members
of said board of supervisors as the paper in which to publish the Session
Laws and the concurrent resolutions of the Legislature for the year 1904,
and to correct the certificate dated November 18, 1903, theretofore filed with
said Secretary of State. Said clerk refused said requests, and each of them,
and an application was then made for a writ of mandamus. The motion of

the relator was denied, and from the order entered thereon this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Van Santfoord & Wellington (George B. Wellington, of counsel), for appellant.

T. J. Quillinan, for respondents.

CHASE, J.  Have the members of boards of supervisors the power to designate newspapers to publish the Session Laws and concurrent resolutions of the Legislature for a period extending more than one year?  This is the first question requiring an answer on this appeal. The period of time for which newspapers are to be designated is not expressly stated in the statute.  The intention of the statute, however, cannot be reasonably doubted.  The purpose of publishing the Session Laws and concurrent resolutions of the Legislature is to give to the people of the state notice of their enactment and of the provisions thereof.  Every person is presumed to know the law, and the earliest and fullest opportunity for reading new statutes is desirable.  That every person, so far as practicable, may have an opportunity to read the laws of a general nature, it is provided that they shall be published in each county of the state, and it is also provided that all laws of a local nature shall be published in each of the counties interested in the same, and as a further means of bringing the laws to the attention of the greatest number of people the statute also provides that the publication shall be made in two newspapers fairly representing the political parties of the members of the board of supervisors of the county representing, respectively, each of the two principal political parties into which the people of the county are divided; and in determining the newspapers that so fairly represent such political parties regard must be had to advocacy by such paper of the principles of its party, and its support of the state and national nominees thereof, and to its regular and general circulation in the towns of the county.  After the designation of a newspaper has been once lawfully signed and filed, it cannot be revoked.  People v. Supervisors of Monroe County, 60 Hun, 328, 14 N. Y. Supp. 867. If such a designation can extend for more than one year, there would seem to be no limit to the period for which it might be extended, at least if the term of office of supervisors should be correspondingly extended. It would be possible for the owner of a newspaper so lawfully designated to sell such newspaper, and by reason of such change of ownership, or by reason of a change in the political principles of an owner, such newspaper might, at a subsequent state or national election, within the term of such designation, advocate the principles of a party other than the one of the members of the board of supervisors so designating it. It would also be possible that the political sentiments of the county would so change, as shown by a subsequent state or national election, within the period for which such newspaper was designated, that the representatives of a third party in the board of supervisors, which at the time of the designation was a minority party in the county, might become the representatives of a majority party in the county, and thus entitle them and the people of the county to have the Session Laws and

concurrent resolutions published in a newspaper fairly representing such political party that had thus become one of the two majority or principal parties into which the people of the county were divided. The whole spirit of the statute, considered in connection with the purpose thereof, requires that the publication of the Session Laws and concurrent resolutions shall be made with reference to the current year and the sentiments and political principles of the people of the county and its newspapers therein at the time of the designation and of such publication, and a designation which extends for more than one year is so contrary to the spirit and intent of the statute that it should not be made, and it is not within the terms of the statute.

The language of the present statute relating to the designation of newspapers (County Law, Laws 1892, p. 1749, c. 686, § 19, as amended by Laws 1900, p. 933, c. 400), as well as that of all previous statutes relating thereto, is consistent with an annual designation of newspapers at the regular fall session of the several boards of supervisors following the general election, and consistent with any other or different practice or procedure. The practice of designating newspapers to publish the Session Laws and concurrent resolutions annually after the general election has been universal. By said section 19 of the county law it is expressly provided that "any designation of a paper or papers made contrary to the provisions of this section shall be void." The designation of the Troy Observer on October 14, 1902, so far as it relates to the year 1904, is void, and the Democratic members of the board of supervisors in 1903 were required by the terms of said section to designate a newspaper representing their party for publishing the Session Laws and concurrent resolutions of the Legislature for the year 1904. It is contended by the respondents that by chapter 124, p. 303, of the Laws of 1901, the annual meeting of the board of supervisors of Rensselaer county is held on the second Tuesday of January in each year, and that, as a Democratic newspaper was not designated at the annual meeting in January, 1903, or at a special meeting called for the purpose, there was no authority in the Democratic members of the board of supervisors to file a designation of a newspaper on December 1, 1903. Assuming that, under section 3 of chapter 715, p. 1470, of the Laws of 1892, the annual meeting of the board of supervisors therein referred to, so far as the county of Rensselaer is concerned, is the meeting in January of each year, the contention of the respondents in regard to the authority of the Democratic members of said board of supervisors on .the 1st day of December, 1903, depends upon whether said section 3 of chapter 715, p. 1470, of the Laws of 1892, is now in force. Where there is no direct repugnancy or inconsistency between the earlier and the later law, there may, in some cases, be an implied repeal. This result follows where the later act revises, amends, and sums up the whole law on the particular subject to which it relates, covering all the ground treated of in the earlier statute, and adding new or different provisions, and thus plainly shows that it was intended to supersede any and all prior enactments on that subject-matter, and to furnish for the future in itself alone the whole and only system of statute law applicable to the subject. Black on Interpretation of Laws, 116. A later statute covering the same sub-

ject-matter and embracing new provisions operates to repeal the prior act, although the two acts are not in express terms repugnant. McDermott v. Nassau Electric R. R. Co., 85 Hun, 422, 32 N. Y. Supp. 884; People v. Jaehne, 103 N. Y. 182, 8 N. E. 374. The Legislature of 1892 passed chapter 682 of the Laws of 1892, known as the "Legislative Law," and section 48 (page 1679) thereof provides that the Secretary of State shall send to each newspaper designated by the members of boards of supervisors copies of the laws to be published by such newspapers; and the act expressly repeals chapter 280, p. 305, of the Laws of 1845, and also the several amendments thereto. This act, by its terms, was not to take effect until October 1, 1892. It was approved by the Governor May 18, 1892. On the same day the Governor approved chapter 686 of the Laws of 1892, known as the "County Law," and by section 19 thereof (page 1749) provision was made for the designation of newspapers by members of boards of supervisors. Such county law, by its terms, took effect immediately. On the 21st day of May, 1892—three days after the approval of said legislative law and said county law—the Governor approved the act known as "Chapter 715 of the Laws of 1892," which in terms amends the several sections of chapter 280, p. 305, of the Laws of 1845. Section 33 of the statutory construction law (chapter 677, p. 1492, Laws 1892) provides as follows:

"No provision of any chapter of the revision of the general laws, of which this chapter is a part, shall supersede or repeal by implication any law passed at the same session of the Legislature at which any such chapter was enacted or passed after the enactment of any such chapter and before it shall have taken effect; and an amendatory law passed at such session or at any subsequent session begun before any such chapter takes effect shall not be deemed repealed unless specifically designated in the repealing schedule of such chapter."

Chapter 715, p. 1470, of the Laws of 1892, being a later act of the same session of the Legislature at which said legislative law and said county law were enacted, was not superseded by such general laws, but the provisions thereof superseded the similar provisions in said general laws. Subsequently, and in 1898, chapter 349, p. 1013, of the Laws of that year, was passed, amending section 19 of said county law; and, in 1900, chapter 400 of the Laws of that year was passed, further amending said section 19 of the county law so as to read as in said chapter provided. Section 19 of the county law, as so amended in 1900, is a full, complete, and independent enactment on the subject-matter in the act contained. It treats the designation of newspapers as the act of the members of the board of supervisors in conformity with the plan of said county law and said legislative law, as distinguished from the provisions of the act of 1845 and the amendments thereto. It is a later statute on the same subject-matter as section 3 of said chapter 715, p. 1470, of the Laws of 1892, and it was intended to sum up the whole law on the subject of such designations. It superseded and repealed by implication said section 3 of chapter 715, p. 1470, of the Laws of 1892, and respondents' contention, so far as it is based upon that section, cannot prevail. The designation of the Troy Daily Press by a majority of the Democratic members of the board of supervisors on December 1, 1903, was a valid and legal designation. Said designation being a valid and legal one, and the designation of the Troy Observer, made October 14,

1902, so far as it related to the year 1904, being void, the clerk of the board of supervisors, in forwarding to the Secretary of State a notice that the Troy Observer had been selected by the Democratic members of the board of supervisors to publish the Session Laws and concurrent resolutions of the Legislature, was not in the performance of any duty required of him by statute. On the designation of December 1, 1903, being filed with him on December 3, 1903, it became his duty to forward to the Secretary of State a notice stating the name and address of the newspaper in said designation stated as the newspaper selected by the Democratic members of the board of supervisors for the publication of said Session Laws and resolutions. He did not neglect and refuse to so forward such notice to the Secretary of State by reason of any controversy over the facts, or by reason of any question relating to the Troy Daily Press being a newspaper that had advocated the principles of the Democratic party and that had supported its state and national nominees.

Every fact is conceded by the record. In his letter to the Secretary of State in explanation of his neglect and refusal to send a notice stating that the Troy Daily Press had been selected by the Democratic members of the board of supervisors to publish the Session Laws and concurrent resolutions for the year 1904 the clerk says, "Having certified to the one designated at the time I received your request, I cannot consistently certify to another." When the law requires a public officer to do a specified act in a specified way upon a conceded state of facts, without regard to his own judgment as to the propriety of the act, and with no power to exercise discretion, the duty is ministerial in character, and performance may be compelled by mandamus if there is no other remedy. People ex rel. Harris v. Commissioners, 149 N. Y. 26–31, 43 N. E. 418. The certificate filed by the clerk with the Secretary of State was erroneous and untrue, and not in accordance with the fact, and, as soon as the designation of December 1, 1903, was filed with him on the 3d day of December, 1903, there was a duty imposed upon him by statute which he has failed and neglected to perform, and the order applied for by the relator should have been granted.

The order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.