[No. 9451. *En Banc.* April 11, 1911.]

# THE STATE OF WASHINGTON, *on the Relation of W. H. Cowles, Plaintiff*, v. J. H. SCHIVELY, *Insurance Commissioner, Defendant.*[1]

STATUTES—CONSTRUCTION—EXECUTIVE CONSTRUCTION. The construction of a statute of doubtful meaning, by the highest law officer of the executive department, while not binding on the courts, is entitled to considerable weight.

NEWSPAPERS—"OF LARGEST CIRCULATION"—DESIGNATION FOR PUBLICATION—DISCRETION OF OFFICER—ABUSE—INSURANCE. Rem. & Bal. Code, § 9037, which provides that the insurance commissioner shall designate two daily papers "of the largest general circulation" for the publication of the annual insurance reports, and that he shall have the right to make a personal examination to determine "which are the two papers of such largest circulation," merely requires him to designate two papers from the class of papers having the largest circulation, and vests a discretion in him to designate any two papers belonging to that class, although the difference in their circulation may be considerable, which discretion will not be controlled by the courts except for abuse (GOSE, FULLERTON, and CHADWICK, JJ., dissenting).

SAME—DESIGNATION OF NEWSPAPER—ABUSE OF DISCRETION. Under Rem. & Bal. Code, § 9037, vesting in the insurance commissioner a discretion to designate a newspaper in Eastern Washington from the class of papers having the largest general circulation for the publication of the annual insurance reports, the commissioner's act in designating a paper having a circulation of from 6,000 to 9,000 when another paper had five times that circulation, is not so arbitrary and capricious as to call for interference by the courts (GOSE and FULLERTON, JJ., dissenting).

MANDAMUS—PLEADING—CONCLUSION OF PLEADER. In mandamus to compel the designation of a certain newspaper for the publication of annual insurance reports, the allegation that the insurance commissioner wrongfully and unlawfully designated a certain paper for the publication amounts to no more than the conclusion of the pleader from the facts alleged.

MANDAMUS—TO PUBLIC OFFICERS—PARTIES ENTITLED TO MAINTAIN. Where the insurance commissioner is vested with a discretion to designate one newspaper from several of the largest circulation, mandamus does not lie at the suit of the paper having the largest circulation to compel its designation.

[1]Reported in 114 Pac. 901.

Application filed in the supreme court March 18, 1911, for a writ of mandamus to the insurance commissioner. Denied.

*Post; Avery & Higgins,* for plaintiff.

*W. P. Bell, Attorney General,* and *W. V. Tanner* and *Geo. A. Lee, Assistants* (*E. C. Macdonald,* of counsel), for defendant.

PARKER, J.—This is an original application for a writ of mandamus, in this court, wherein the relator seeks to compel the insurance commissioner to designate the Spokesman-Review as the newspaper in which the insurance companies doing business in this state shall publish their annual statements for the present year, in compliance with Rem. & Bal. Code, § 6119, which provides:

"Every insurance company, corporation or association doing business in the state of Washington shall cause to be published once each year, during the month of March or of April, in two daily papers of the largest general circulation, to be designated by the insurance commissioner, one in western Washington and one in eastern Washington, a full synopsis of its annual statement as prepared by the insurance commissioner: Provided, the secretary of state shall under this act have the right to make a personal examination of the books and records of any such paper, when not satisfied with the affidavits, to determine which are the two papers of such largest circulation. The cost of such examination, when made, shall be paid by the newspapers whose books have been examined; and the refusal of the owner, manager or editor to permit of such examination will be considered prima facie evidence that such paper has not the largest paid circulation."

The case is before us upon demurrer to the petition for the writ, and also upon answer to the petition. Our conclusion upon the demurrer, however, renders it unnecessary to notice the answer. The substance of the allegations of the petition may be stated as follows: The relator is the publisher of the Spokesman-Review, a daily newspaper published at Spokane. This paper has the largest general circulation

of any paper in eastern Washington. Its daily circulation is 30,000 and its Sunday circulation is 49,000. The defendant on about March ——, 1909, designated the Inland Herald, a daily newspaper published at Spokane, as a paper in which the insurance companies doing business in the state should publish their annual statements. This paper does not have a general circulation equal to one-fifth of the largest circulation in eastern Washington. The amount of its circulation is not alleged, but from the allegation made by the relator, it may be assumed that its circulation is nearly one-fifth of that of the largest circulation in eastern Washington. There are from two to five daily newspapers published in eastern Washington having a larger general circulation than the Inland Herald. Prior to March 1, 1909, the relator requested the defendant to designate the Spokesman-Review as the newspaper in which the insurance companies should publish their annual statements for the present year. Thereafter he designated the Inland Herald as such newspaper for eastern Washington. Following the allegations showing these facts, the relator alleges, "Said defendant has, as aforesaid, wrongfully and unlawfully designated said Inland Herald as such paper"; and prays that the defendant be required to designate the Spokesman-Review as the newspaper in which such publication shall be made in eastern Washington, and that his designation of the Inland Herald be annuled.

It is contended by counsel for the relator that the commissioner has no discretion in the designation of the newspaper in which the publications shall be made; that he only has to determine the fact as to which paper has *the largest circulation,* and then designate that paper; and that such determination of fact does not involve discretion. It is contended by counsel for the defendant that the discretion of the commissioner in designating the newspaper, is, under the law, such that the courts cannot interfere therewith, especially in the absence of action on his part amounting to an arbitrary designation of a newspaper without any exercise of honest judg-

ment; that the law does not require the commissioner to desig-
nate the newspaper having *the largest* circulation, but only
to designate a newspaper from the class having the largest
circulation, leaving it discretionary with him as to which one
of that class he may designate; and that in any event his de-
cision upon the fact as to which paper has the largest cir-
culation, involves discretion, is final, and not reviewable by the
courts.

It is important that we first determine the nature of this
duty of the commissioner and to what extent it is discretion-
ary. We may concede, for the sake of argument, that the
commissioner is not entirely beyond judicial restraint in the
designation of the newspapers for these publications, and still
find that his discretion is such that we should not interfere
with in in this case. We must first ascertain the bounds of
his discretion before we can determine whether or not it has
been exceeded. Now, if the commissioner's discretion is
limited only to designating one of the class of newspapers
having the largest circulation in each division of the state,
it is manifestly much broader than if his designation is limited
to the single newspaper having the largest circulation in each
division of the state. We have noticed that, by the terms of
the law, the publications are to be made "In two daily papers
*of* the largest general circulation, to be designated by the
insurance commissioner." The correct construction of this
provision rests largely upon the sense in which the word "of"
is used in this paragraph. On March 6, 1905, the secretary
of state, who was then under the law ex-officio insurance com-
missioner, requested an opinion from the attorney general
upon this exact question. In compliance with that request,
as was his duty under Rem. & Bal. Code, § 9037, the attorney
general rendered a written opinion in which he said:

"I believe that the law, clearly indicates that the publica-
tion of the reports referred to therein, is to be in a paper
which is in a *class* of those having the largest general circula-
tion, and that it is not mandatory that such paper shall be

specifically one having the largest number of subscribers; for if that were the intention of the statute, most of the remainder of the section would be more or less without meaning, especially the clause that states that the paper is 'to be designated by the insurance commissioner, one in western Washington, and one in eastern Washington.' It seems to me that the intention of the statute is that these reports shall not be published in certain smaller papers, of limited county or local district circulation; but in papers that largely and generally circulate in the two sections of western and eastern Washington, respectively."

This opinion, with others of the attorney general, was published in usual manner, in his report to the governor and the legislature for the year 1905, at page 50. Three legislative sessions have been held since then and no change made in this law. This court has recognized the rule that the construction of a law of doubtful meaning, by the department of a state or government charged with its administration, and by its highest law officer, when such law has to do with a matter of public concern, is entitled to considerable weight in determining the intention of the legislature, though, of course, such construction is not binding upon the courts. *Spokane & Eastern Trust Co. v. Young,* 19 Wash. 122, 52 Pac. 1010; *Hicks v. King,* 21 Wash. 567, 58 Pac. 1070.

The word "of" is defined in Webster's new International Dictionary as,

"In the most general sense; proceeding from; belonging to; relating to; connected with; concerning."

Also, as,

"Indicating the aggregate or whole of which the limited word or words denote a part, or of which a part is referred to, thought of, affected, etc.; belonging to a number or quantity mentioned; out of; from amongst; as, most *of* the company; the poor *of* his people; the flower *of* the family; the king *of* kings."

The last quoted definition and examples seem particularly applicable to the word as here used. And it seems to us that

the expression "*of* the largest general circulation" used in this law, does not necessarily mean the two papers having the largest circulation, but could as well be held to mean any two papers belonging to the class having the largest circulation, which class might well consist of more than two papers. Another argument in support of the attorney general's view is that the law fixes no obligation whatever upon any newspaper to publish these statements, nor does the law fix any limit to, or indicate, the charge which the papers may make for such publications. It would create rather a strange situation to say that the law compelled the designation of the newspaper having the largest circulation, and at the same time fixed no obligation whatever upon such newspaper to publish the statements, nor limit the charge therefor. This, we think, indicates that the commissioner's decision is not to be hedged about by hard and fast rules. It may be suggested that such a paper would be eliminated from consideration by the terms of the proviso of the law; but when that proviso is critically read it can hardly be said to limit the source of the commissioner's information to an examination of the books of a newspaper, or to affidavits furnished directly to him by such paper. The law does not tell us what affidavits or whose affidavits he many consider. We are of the opinion that the insurance commissioner under this law has discretion to designate any one of the papers belonging to the class having the largest circulation, and to determine what papers belong to that class, although the difference in the amount of their circulation may be considerable.

Assuming, now, that the commissioner's discretion may be so abused in designating a newspaper as to call for interference by the court, do the facts here alleged show that he has so abused his discretion. The allegations of the petition that the commissioner has "wrongfully and unlawfully designated said Inland Herald," we think means nothing more than that such is the conclusion of the pleader from the facts alleged, and that this conclusion has for its basis only the fact of the

difference in the amount of the circulation of the two papers here involved.    According to these allegations, the Inland Herald may have a circulation of from 6,000 to 9,000.    We cannot say that the designation of such a paper by the commissioner under this law, in view of the discretion which the law seems to give him, is so clearly arbitrary and capricious as to call for interference by the court, when there is no fact calling for interference save the difference in the circulation of the two papers here involved.    In any event, this fact, in connection with the fact that there are evidently other papers than the Spokesman-Review belonging to the class from which the designation may be made, renders it clear that the Spokesman-Review is not entitled, as a matter of law, to such designation at the hands of this court upon the refusal of the commissioner to designate that paper.

This law was not made for the benefit of the newspapers; and while a newspaper publishing these statements would, of course, reap some financial benefit therefrom, such fact should be of no weight, in determining the question of the court's control over the act of the commissioner in making his designation.    We are not disposed to treat the question as one of private right, but only as one of public concern.    If the relator has the right and legal capacity to prosecute a proceeding of this nature to restrain or control such a public duty of a state officer, which question we do not now decide, it is only because he is a citizen of the state, interested in common with other citizens, and not because he has any private rights involved therein.    In its last analysis, this becomes a question of the judiciary interfering with the executive branch of the state government in a matter involving the exercise of discretion of one of the high officers of the state, concerning a public duty only.    Before the judiciary will interfere in such a case, it must clearly appear that such officer has so far departed from the line of his duty under the law, that it can be said he has in fact so far abused such discretion that he has neglected or refused to exercise any discretion.    When a

private right of a citizen is violated by an executive officer under the guise of official power there is quite a different question presented. We cannot see our way clear to interfere with the commissioner's designation, upon the facts here alleged. The writ is denied.

Dunbar, C. J., Mount, Crow, and Morris, JJ., concur.

Gose, J. (dissenting)—If the purpose of the legislature in enacting the statute was to acquaint the public with the general condition of the insurance companies doing business in the state—and I can conceive of no other purpose, the interpretation put upon it by the majority will defeat the object sought to be accomplished. It is clear to my mind that the scope of the word "of" ought not to be limited as applying to a class of papers, but that it should be held to be synonymous with "having." The single duty of the insurance commissioner under the statute is to designate, that is, identify or point out, to the insurance companies the two daily papers having the largest general circulation, one in western Washington and one in eastern Washington. This view I think is made clear by the provision which gives the secretary of state the right to make a personal examination of the books and records of "any such paper," "to determine which are *the two papers* of such largest circulation." I think the statute imposes only a ministerial duty on the commissioner.

"An act is none the less ministerial because the person performing it may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act." 26 Cyc. 161.

The respondent's contention that the statute clothes him with a discretion which cannot be controlled by the courts cannot be sustained. If he is given a discretion and exercises it arbitrarily, his acts are subject to review. If the paper designated has less than one-fifth the general circulation of the Spokesman-Review, as the petition alleges and the demurrer admits, there has been such a gross abuse of discretion

that the law would indeed be impotent if it could not correct the mischief. By no process of reasoning can it be ruled that a discretion which determines that one is larger than five is not subject to the corrective power of the courts. 26 Cyc. 161; *Puget Sound Publishing Co. v. Times Printing Co.,* 33 Wash. 551, 74 Pac. 802. The demurrer should be overruled and a reference ordered to ascertain the facts. I therefore dissent.

FULLERTON, J., concurs with GOSE, J.

CHADWICK, J. (dissenting)—It seems that I am unable to agree with my associates. If it were not for that part of the statute providing that the insurance commissioner has the right to make a personal examination of the books and records to ascertain the fact of circulation, I could concur in the majority opinion on the ground that courts cannot control the discretion of a public officer or compel the finding of a particular fact by him. Under a statute similar to ours, but without the proviso or some similar limitation, it has been uniformly held that a court will not control the discretion of an officer or review his finding of fact. *Holliday v. Henderson,* 67 Ind. 103; *Matter of Troy Press Co.,* 94 App. Div. 514, 88 N. Y. Supp. 115; *People ex rel. Opdyke v. Brennan,* 39 Barb. 651; Merrill, Mandamus, § 31.

I contended for this rule in the case of *Times Printing Co. v. Star Publishing Co.,* 51 Wash. 667, 99 Pac. 1040. I find no statute similar to our own to have been construed by any of the courts. But I am of the opinion that, when the statute says that the insurance commissioner shall have the right to make an examination of the books and records of a newspaper to determine its circulation, it is equivalent to saying that it is his duty to do so, unless otherwise satisfied upon such showing as may be called for by him. It does not appear that any showing was called for in this case. The terms "right" and "duty," as here employed are correlative. The word "right" was used to give power to the commissioner in the performance

of a duty where he might otherwise be hampered in carrying out the spirit and mandate of the statute. It if were not the intent of the law to compel the publication of these notices in the paper having in fact the largest circulation, it was unnecessary to point out a specific method for ascertaining that fact. The way was not left discretionary, as in the statutes referred to in the cases which I have cited. Therefore the duty of the commissioner is not to exercise a discretion, but to determine a fact capable of mathematical demonstration, and when the fact is determined, the duty becomes ministerial. There is no discretion.

"When the law requires a public officer to do a specified act in a specified way upon a conceded state of facts, without regard to his own judgment as to the propriety of the act, and with no power to exercise discretion, the duty is ministerial in character, and performance may be compelled by mandamus if there be no other remedy." *Matter of Troy Press Co.*, 94 App. Div. 514, 88 N. Y. Supp. 115.

See, also, *United States ex rel. Miller v. Raum*, 135 U. S. 200.

As illustrative of the distinctions I wish to draw, reference may be had to two cases. In *Holliday v. Henderson*, 67 Ind. 103, the statute provided that the statements of foreign insurance companies should be published in "the two leading daily newspapers of the state having the largest general circulation therein." Upon a mandamus proceeding brought on behalf of the Indianapolis News, although the complaint alleged that the News was one of the two leading newspapers and had the largest general circulation in the state, and that the papers designated by the state auditor were not entitled to the publication, it was held, on demurrer to the complaint, that the writ would not issue; many cases being cited to sustain the text that, "because the act requires the exercise of discretion and judgment, which is *entrusted by law* to the auditor," a mandate would not issue to compel him to act in a particular manner. In other words, the law being silent as to the manner in which the fact should be found, the court refused to go behind the certificate and designation of the

officer. In *People ex rel. Frances v. Common Council of Troy*,
78 N. Y. 33, 34 Am. Rep. 500, a like holding was made, the
court saying that:

"Where a subordinate body is vested with power to deter-
mine a question of fact, the duty is judicial, and, though it
can be compelled by mandamus to determine the fact, it cannot
be directed to decide in a particular way, however clearly it
be made to appear what the decision ought to be."

It was held that the act of the city council in designating
newspapers would not be controlled although the true fact
might be other than as found by the council, the premise of
the court's reasoning being that "no mode of ascertaining
which papers have the largest circulation is pointed out by
the statute, and consequently that question is left open as
one of fact to be determined by the common council;" in-
dicating that, if a mode had been provided for ascertaining
the fact, the rule would have been otherwise. There would
have been no discretion. It is so here. The mode is pointed
out.

"Where the particular steps for the accomplishment of an
object are prescribed by law, or from the nature of the case
the act can be performed in but one way, the writ may very
properly specify the exact thing to be done." Spelling, In-
junctions and Other Extraordinary Remedies, § 1434.

As I read the statute, this case does not come within the rule
that discretion and judgment will not be controlled, nor within
the rule permitting courts to control the act of public officers
when they have acted arbitrarily or in fraud of the rights of
an individual; but rather within the primary rule that, where
an act is ministerial, no discretion or judgment being left to
the officer, mandamus is a proper remedy.

The writ should issue.