[No. 10205.   Department Two.   April 8, 1912.]

## The State of Washington, *on the Relation of the North Coast Fire Insurance Company, Plaintiff,* v. J. H. Schively, *Insurance Commissioner, Respondent.*[1]

Courts—Jurisdiction—Mandamus—To "State Officers"—Insurance Commissioner. The state insurance commissioner is a state officer, within the meaning of Const., art. 4, § 4, conferring original jurisdiction upon the supreme court in mandamus to "all state officers," the same not being limited to the heads of executive departments recognized *eo nomine* as state officers in Id., art. 3.

Insurance—Regulation—Statutes— Scope — Pre-Existing Companies. A domestic fire insurance company authorized to and doing a fire and plate glass insurance business prior to the adoption of the insurance code is subject to the restrictions of the code after its adoption, in view of § 238 (Laws 1911, p. 298), providing that all prior acts are superseded and repealed, and § 20 (Id., p. 177), providing that all domestic insurance companies then or thereafter formed, and every person doing an insurance business in the state shall be subject thereto.

Insurance—Regulation—Authority—Character of Insurance—Fire and Plate Glass—Statutes. Such a fire insurance company has no right to issue plate glass insurance after the adoption of the insurance code, in view of §§ 83 and 84 (Laws 1911, pp. 217, 223), dividing insurance companies into classes, and limiting fire insurance companies to other classes of insurance (marine and team and vehicle insurance).

Same. Section 79 of the insurance code (Laws 1911, p. 216) providing that existing companies previously authorized to transact business in the state are recognized and shall have the right to continue such business under the provisions of the act, provided their capital stock meets the requirements, and that they shall have two years to meet the requirements, does not authorize a fire insurance company formerly doing also a plate glass insurance business, to continue issuing both fire and plate glass insurance in violation of the act, especially in view of a further proviso expressly excepting pre-existing life companies from restrictions against issuing both life, accident, health and liability insurance; the specific exception in favor of life companies being an implication against any other exception not expressed.

[1]Reported in 122 Pac. 1020.

Application filed in the supreme court February 21, 1912, for a writ of mandamus to the state insurance commissioner. Denied.

*James W. McBurney* and *Wm. O'Connor*, for relator.

*The Attorney General* and *J. T. S. Lyle, Assistant*, for respondent.

ELLIS, J.—This is an original application on the relation of the North Coast Fire Insurance Company, a domestic corporation, for a writ of mandamus to compel the insurance commissioner to issue to it a license to make both fire and plate glass insurance. The respondent has demurred to the petition on the ground that this court has no jurisdiction of the proceeding and has also made his return to the alternative writ.

The respondent contends that, under the holding of this court in *State ex rel. Stearns v. Smith,* 6 Wash. 496, 33 Pac. 974, the demurrer should be sustained. In that case it was stated to be the general rule that the term "state officer" is only applied to those superior executive officers who constitute the heads of the executive departments of the state. Had that definition of state officers been left by the decision thus broadly stated, it would obviously include the insurance commissioner. He constitutes the head of the insurance department, and is elected as are other heads of executive departments. On that ground the case here might easily be distinguished from the case cited. That case determined that a member of the board of regents of the agricultural college is not such a state officer as by the constitution is made subject to the original jurisdiction of the supreme court in mandamus. That decision, however, by construction further contracts the meaning of the term "state officers," as used in § 4, art. 4 of the constitution, which confers upon this court original jurisdiction in mandamus, until it is made to include only those heads of executive depart-

ments recognized *eo nomine* as executive officers in art. 3 of the constitution. On mature consideration we now hold that construction too narrow. In *State v. Womack*, 4 Wash. 19, 29 Pac. 939, this court held that art. 3 of the constitution does not undertake to limit the executive officers of the state to those enumerated therein, but that the object of the framers of the constitution was "to classify the executive departments of the state rather than to exclusively establish its executive officers." The reasons for that holding as set forth in the last mentioned opinion, seem to us unanswerable. That holding renders untenable the ground upon which the decision in *State ex rel. Stearns v. Smith, supra,* is made to rest. If art. 3 of the constitution does not limit state officers to those therein enumerated, then there is no good reason why § 4 of art. 4, which confers original jurisdiction in mandamus "as to all state officers" should be so limited. We are impelled to the conclusion that the insurance commissioner is such a state officer as, within the meaning of the constitution, is subject to the jurisdiction of this court in original proceedings for mandamus. This court actually entertained that jurisdiction in the recent case of *State ex rel. Cowles v. Schively*, 63 Wash. 103, 114 Pac. 901, though the question here presented seems not to have been raised. The demurrer is overruled.

On the merits, it appears that the relator was incorporated under the laws of the state of Washington on February 4, 1907, with a capital stock of $250,000. It is empowered by its articles of incorporation to make fire, plate glass, and various other kinds of insurance. At the time of the enactment of ch. 49, p. 161, Laws of 1911, defined in the act itself as "The Insurance Code," the relator was licensed to make both fire and plate glass insurance, and was not writing any other kind. Before the enactment of the insurance code, no restrictions other than those imposed by their articles of incorporation were placed on stock insurance companies pro-

hibiting them from writing whatever different kinds or classes of insurance they might elect.   The act of 1911 is a complete insurance code.   It covers the entire subject of insurance. It expressly supersedes and repeals all prior acts on the subject.   Section 238 of the code declares:

"This act may be referred to and shall be known as 'The Insurance Code' and shall supersede all prior acts on the subject of the organization and government of insurance companies and insurance business, and all such prior acts are hereby repealed."   Laws 1911, p. 298.

The respondent contends that the relator being a domestic insurance company operating under former insurance laws, its right to continue making insurance in this state is now governed by the provisions of the insurance code.   Section 20 of the code provides that:

"All domestic insurance companies, now or hereafter formed under the laws of this state, and every insurance agent, solicitor, broker, surveyor, or adjuster, doing business in this state, and all insurance business transacted in whole or in part within or outside of this state, the subject-matter of which insurance is located wholly or in part in this state, and any marine insurance made, effected, or placed by any company through any agent or broker in this state, unless otherwise provided, shall be subject to and be governed by this act; and the records of each insurance company, agent, solicitor, broker, surveyor or adjuster doing business in this state shall be subject to the inspection and examination of the commissioner, his deputy, or examiner."   Laws 1911, p. 177.

This section clearly subjects the relator to the restrictions of the insurance code, unless there can be found in the act some exception in its favor, either expressed or implied. Among these restrictions, domestic insurance companies writing fire insurance are prohibited by the code from making plate glass insurance.   An analysis of the pertinent parts of the code makes this plain.   Section 83, p. 217, classifies the various kinds of insurance.   Fire insurance is included in class

1.   Plate glass insurance is separately classified as class 7. Section 84 provides that:

"Any insurance company having the required amount of capital, or assets, when permitted by its articles of incorporation or charter, may be authorized and licensed by the commissioner to make insurance in this state under one or more of the classes prescribed in the several paragraphs in section eighty-three of this act, as follows:

"(1)   Fire and Inland Marine Companies—Qualifications. No stock insurance company shall make insurance in this state under class one of section eighty-three of this act, without having capital stock of at least two hundred thousand dollars, of which not less than one-half must be paid in in cash or like securities authorized by this act, and the remainder, in cash or like securities, paid within one year after the company is incorporated, and a surplus of not less than fifty thousand dollars, nor shall such company make insurance in this state, in any other of said classes of insurance specified in said section, except in classes two and thirteen; and is not to make insurance in class two without having additional capital of at least one hundred thousand dollars, and is not to make insurance in class thirteen in addition to class one without having additional capital of at least fifty thousand dollars; or in addition to classes one and two without having a capital stock of at least three hundred and fifty thousand dollars."   Laws 1911, p. 219.

By § 83, class 2 is marine insurance, and class 13 is team and vehicle insurance. It is thus made plain that a stock insurance company having the required amount of capital stock and surplus paid in making insurance in class 1 (fire insurance) is limited to just two other kinds of insurance, viz., class 2, marine insurance, and class 13, team and vehicle insurance, and can make no other kind or class. The requirements of the code with reference to stock insurance companies making plate glass insurance are found in paragraph 7 of § 84, which is as follows:

"(7)   Other Companies—Requirements. No stock insurance company shall make insurance in this state in either of the following classes specified in section eighty-three: Four,

seven, [plate glass] eight, nine, ten, eleven, thirteen, and fourteen, without having a capital stock of at least one hundred thousand dollars fully paid nor shall such company make insurance in more than one of said classes unless it shall have additional capital of not less than fifty thousand dollars: Provided, however, That the requirement of a surplus as provided in this section shall only apply to domestic insurance companies organizing and commencing to transact the business of making insurance and that such company may use such surplus in establishing the company in business without impairment of the company." Laws 1911, p. 223.

That the insurance code by the sections above quoted and referred to prohibits any stock insurance company making fire insurance from making plate glass insurance seems too plain for argument.

It is urged, however, that notwithstanding this plain intention, the relator is exempted from the operation of the code in this particular by § 79, reading as follows:

"Every domestic insurance company previously organized, and licensed to transact insurance business in this state at the time this act goes into effect, is hereby recognized as an existing company, and shall have the right to continue such business under the provisions of this act: Provided, That any such company whose capital does not meet the requirements of this act shall have two years from the first day of January, nineteen hundred and twelve, in which to conform to the requirements of this act relating thereto: Provided further, That any such company whose charter or articles of incorporation permit it to make life, accident, health and liability insurance, and shall have been licensed to transact such business in this state prior to the first day of February, 1911, having a capital of not less than three hundred and fifty thousand dollars, shall be permitted to continue to transact such kind of business under the provisions of this act." Laws 1911, p. 216.

This section, exclusive of the last proviso, does no more than preserve to domestic insurance companies the power to continue in business "under the provisions of this act" pend-

ing a time which the legislature deemed adequate to enable them to make their capital, surplus, etc. conform to the act. The grace of this section goes no further. It accords no rights as to writing different classes of insurance except those accorded under the general provisions of the act itself, other than those found in the last proviso. The contention that the legislature intended to permit all domestic corporations which had been previously organized and licensed to do business to continue writing every class of insurance any provisions of the new insurance code to the contrary notwithstanding, finds no reasonable support in this section, when it is read in connection with §§ 20 and 238, hereinbefore quoted. The first sentence of § 79, which reads, "Every domestic insurance company previously organized, and licensed to transact insurance business in this state at the time this act goes into effect, is hereby recognized as an existing company, and shall have the right to continue such business under the provisions of this act," when viewed in the light of § 20, which reads, "All domestic insurance companies, now or hereafter formed under the laws of this state, . . . shall be subject to and be governed by this act," makes the phrase "*under the provisions of this act*," a limitation and not a grant of powers as applied to all domestic insurance companies "now or hereafter formed;" that is to say, whether doing business in this state at the time the insurance code came into effect, or formed thereafter. It is thus manifest that the phrase which we have italicized should be construed as if it read "under and subject to the provisions of this act." Since the insurance code (§ 238) supersedes all prior acts on the subject of the organization and government of insurance companies and insurance business and repeals all prior acts on that subject, the relator and other companies similarly situated, if its contention be indulged, would be permitted to transact business subject to no statutory restraints whatever. There seems to be no middle ground. The relator either is subject to the provisions of the insurance

code or is subject to no statute, all prior acts having been repealed without reservation.

The only exceptions to the general provisions of the insurance code which save any rights to or confer any privileges upon domestic insurance companies which were doing an insurance business prior to the enactment of the code, are found in §§ 79 and 19. The first proviso in § 79 merely accords to such companies a period of two years from January 1, 1912, in which to conform its capital to the requirements of the code. To illustrate: Par. 1, § 84, p. 219, prohibits a stock fire insurance company from making fire insurance without having a capital stock of at least $200,000 of which not less than one-half must be paid in cash or securities authorized by the act, and a surplus of not less than $50,000. The first proviso of § 79 gives to the relator, a fire insurance company, the two years' grace in which to conform its capital and surplus to these requirements. Again, by the provisions of the code a company making life insurance may also make accident and health but not liability insurance. (Par. 3, § 84.) The second proviso of § 79 is as follows:

"*Provided further*, that any such company whose charter or articles of incorporation permit it to make life, accident, health and liability insurance, and shall have been licensed to transact such business in this state prior to the first day of February, 1911, having a capital of not less than three hundred and fifty thousand dollars, shall be permitted to continue to transact such kind of business under the provisions of this act." Laws 1911, p. 216.

This is the only instance in the insurance code where a domestic company organized and licensed to transact business prior to the enactment of the insurance code is permitted to continue making classes of insurance prohibited to the same company by the general terms of the code. If the legislature had intended that domestic insurance companies licensed to make fire and plate glass insurance prior to the

enactment of the code, were to be permitted to continue writing both classes under the code, it would have so provided by a specific exception, as it did in the case of prior licensed domestic companies making life and liability insurance. The specific exception in favor of life insurance companies is a plain implication against any intention to make any other exception not so expressed. The only other express exception from the limitations of the insurance code is that made by § 19, p. 177, in favor of companies authorized to write underwriters' policies prior to January 1, 1911.

The relator argues that there is no better reason for making the above express exceptions than for making the exception claimed in its favor. This is an argument which might have persuasive force as addressed to the legislature, but cannot weigh with the courts. Whether any exception should be made, and if so, what exception, was purely a matter of legislative discretion. That is a province which we cannot invade. Since the legislature has failed in express terms to except companies such as the relator from the restrictions of the insurance code, and since we are unable to find any reasonable ground for an implied exception in the relator's favor, we must hold that the relator is subject to all of the restrictions of that code, and is not entitled to a license to write plate glass insurance in addition to fire insurance.

The writ is denied.

DUNBAR, C. J., FULLERTON, MORRIS, and MOUNT, JJ., concur.