In the Matter of the Application of SMITH PEARSALL, Owner and Publisher of the Nassau County Review, for a Peremptory Writ of Mandamus against the CLERK OF THE BOARD OF SUPERVISORS OF NASSAU COUNTY and THE SOUTH SIDE NEWS COMPANY, Owner and Publisher of the Owl, Intervenor.

SMITH PEARSALL, Respondent; GEORGE M. GOODALE, Individually and as Clerk of the Board of Supervisors of Nassau County, and THE SOUTH SIDE NEWS COMPANY, etc., Appellants.

Second Department, April 10, 1914.

County — designation of newspapers to publish Session Laws — results of last annual election controlling — change in supremacy of political parties.

A board of supervisors in designating newspapers to publish the Session Laws and concurrent resolutions of the Legislature, pursuant to section 20 of the County Law, should designate newspapers representing the two principal political parties within the county as established by the results of the last *annual* election.

Hence, although the National Progressive party had a voting supremacy over the Republican party in the gubernatorial and presidential elections of 1912, a Republican newspaper should be designated where the subsequent election of judges of the Court of Appeals and county officers held in 1913 gave the Republican party numerical supremacy over the Progressive party.

APPEAL by George M. Goodale, individually and as clerk, etc., and another, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Nassau on the 11th day of February, 1914, granting respondent's motion for a peremptory writ of mandamus.

*Henry P. Keith*, for the appellant Goodale.

*Elvin N. Edwards*, for the appellant intervenor.

*Jeremiah Wood*, for the respondent Smith Pearsall.

THOMAS, J.:

The question is whether the Nassau County *Review*, or the *Owl*, severally representative of the Republican and the National Progressive parties in the county of Nassau, shall be designated to publish the Session Laws and concurrent resolutions of the Legislature, pursuant to section 20 of the County Law (Consol. Laws, chap. 11; Laws of 1909, chap. 16). By peremptory writ of mandamus the clerk of the board of supervisors has been directed to file with the Secretary of State the designation of the Nassau County *Review* as one of the official papers for such publication, although he had already, at the direction of the two Democratic members of the board, who are a majority thereof, filed the designation of the *Owl* and the North Hempstead *Record*, representing, the former the National Progressive and the latter the Democratic party. The only other member of the board, a Republican, filed with such clerk a written designation of the Nassau County *Review* to be filed with the Secretary of State. The same condition exists in the board of supervisors of the county of Nassau as in the year 1912, when the supervisors by direction of the court designated the *Owl*. (*People ex rel. Bonheur* v. *Christ*, 208 N. Y. 12.) At that time there had been an election at which Presidential electors as well as State officers, including Governor, and county officers were elected, and the vote in the county indicated the voting supremacy of the Progressive party. But in 1913 there was another election which subordinated the Progressive party to the Republican party in the numerical strength of the vote. The question, then, is whether the designation shall be determined by the vote of 1912 or by the vote of 1913. In other words, is the Republican or the National Progressive party one of the " two principal political parties into which the people of the county are divided ? " It is the appellants' contention that regard must be had to a general election involving candidates for Governor. In *Matter of Troy Press Co.* (94 App. Div. 514; affd. without opinion, 179 N. Y. 529) it was considered that the designation was limited in duration to one year, inasmuch as meantime the minority party might become one of the two principal parties. If this view be accepted, it is evident that the annual designa-

tion should not be based on the expression of the views of the voters of the county for Presidential electors, chosen once in each four years, or of the Governor, chosen once in two years. In 1913 two judges of the Court of Appeals were chosen, but the elections of judges to that court come at uncertain periods. If, now, the expressions of Mr. Justice CHASE in *Matter of Troy Press Co.* are obligatory in the present determination, it would seem to be the duty to discover what vicissitude in opinion was found at the general election, which the Election Law (§ 290) directs " shall be held annually " in the month of November. The official canvass of the State for the election of 1913 would show Judge BARTLETT, a Democrat, and Judge HISCOCK, a Republican, elected as members of the Court of Appeals, while the vote for the county of Nassau would show that Judge WERNER and Judge HISCOCK, the Republican candidates, severally received votes largely in excess of the Democratic candidates, and that the candidates on the National Progressive ticket received about one-third of the vote so given Republican competitors. If attention be given to the vote for county officers, there will be found a concerted distribution of nominees between the Democratic party and the National Progressive party. The offices to be filled were Member of Assembly, sheriff, county clerk, district attorney, county treasurer, superintendent of the poor and county comptroller. The highest vote received by a Republican, as shown by the tally sheet, was for county clerk, 8,421; the lowest vote received by a Republican was for county treasurer, 7,068. The highest vote received by a Democratic candidate on the Democratic ticket was for county treasurer, 6,253, and the lowest vote was 5,270 for county clerk. The highest vote received by a candidate of the National Progressive party on its ticket was for sheriff, 3,021, and the lowest vote was for county clerk, 2,067. The average vote on the National Progressive ticket for the seven offices is 2,335. The average vote on the Republican ticket for the seven offices is 7,642. The average vote on the Progressive ticket for the Court of Appeals is 2,427. The average vote on the Republican ticket for Court of Appeals is 7,499. There is no rational doubt that the annual election, which the statute directed should be held in the year 1913,

showed that the voters of the Republican party had the greater voting power, and that the voters of the National Progressive party were the least in that regard. So the question is whether the people of the county of Nassau shall be informed of the laws through the medium of an organ that represents the least number of people or by a paper that represents the voters largely in local ascendency. The statute is obscure on account of its deficiency in providing for a condition that suddenly arose, but while different views in interpretation may be respected, it seems both fair and reasonable that the votes of the electors of the county so emphatically cast in favor of the Republican party should prevail. It is urged that the vote of the National Progressive party should not be segregated from the total vote that its candidate received, but that he should have the credit for all the votes cast for him, whether they appear on the Democratic or National Progressive ticket. If this rule were adopted the supremacy of the Progressive party would be obtained by counting the votes on the Democratic ticket, and the total strength of the Democratic party would appear by adding to its votes those received on the ticket of the National Progressive party. So the truth would not be told. In the interesting brief in behalf of the appellant it is urged that we should look to the Election Law,* which describes a party as " any political organization which at the last preceding election for governor polled at least ten thousand votes." (Election Law [Laws of 1911, chap. 891], § 3, subd. 8), or section 301 of the Election Law, which provides for the publication of the list of registration in two newspapers selected with reference to their support of the candidates "at the last preceding election for governor," and to other parts of that law (§§ 302, 196, 331). I have already pointed out that such test would necessarily make the designation of newspapers biennial, whereas the purpose of the statute is that there shall be an annual designation, to the end that the recent laws of the

* See Consol. Laws, chap. 17 (Laws of 1909, chap. 22), § 3, subd. 8, as renum. and amd. by Laws of 1911, chap. 891; Id. §§ 196, 301, 302, 331, as amd. by Laws of 1911, chaps. 649, 872, and Laws of 1913, chap. 587, since amd. by Laws of 1913, chaps. 820, 821, and Laws of 1914, chaps. 87, 238, 239, 244. – [REP.

Second Department, April, 1914. [Vol. 162.

Legislature may be brought home to the people at the earliest opportunity.

The order should be affirmed, but in view of the public importance of the matter and of the obscurity of the statute, without costs.

JENKS, P. J., BURR, CARR and PUTNAM, JJ., concurred.

Order affirmed, without costs.